**Todd HOLLEY, individually and on Behalf of All Others Similarly Situated, Plaintiff,**

v.

**KITTY HAWK INC., M. Tom Christopher and Richard Wadsworth, Defendants.**

No. Civ.A.3:00CV0828P.

United States District Court,
N.D. Texas,
Dallas Division.

March 6, 2001.

Steven G. Schulman, Attorney at Law, Samuel Rudman, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Marc A. Topaz, Attorney at Law, Schiffrin & Barroway, Bala Cynwyd, PA, Roger L. Mandel, Attorney at Law, Stanley, Mandel & Iola, Dallas, TX, Steven E. Cauley, Attorney at Law, Cauley, Geller, Bowman & Coates, Little Rock, AR, Paul J. Geller, Attorney at Law, Cauley, Geller, Bowman & Coates, Boca Raton, FL, for Todd Holley.

Stuart D. Wechsler, Attorney at Law, Frederick W. Gerkens, III, Attorney at Law, Wechsler, Harwood, Halebian & Feffer, New York City, Jeffrey W. Chambers, Attorney at Law, Chambers Law Firm, Dallas, TX, Howard S. Meyers, Attorney at Law, Robert G. Heim, Meyers & Heim, New York City, for Russell Schwegman.

Paul W. Ridley, Attorney at Law, Kirkpatrick & Lockhart, Dallas, TX, for Dale Crandall.

Jeffrey C. Block, Attorney at Law, Michael M. Sullivan, Attorney at Law, Berman, Decalerio & Pease, Boston, MA, Mark Stromberg, Attorney at Law, Shields, Britton & Fraser, Dallas, TX, Charles J. Piven, Attorney at Law, Law Office of Charles J. P., Baltimore, MD, for Trans American Airlines, Inc. and Charles Landan.

Noel M. B. Hensley, Attorney at Law, Haynes & Boone, Dallas, TX, for Kitty Hawk, Inc.

William Michael Vaggett, Attorney at Law, John P. Kincade, Attorney at Law, LeAllen Frost, Attorney at Law, Winstead, Sechrest & Minick, Dallas, TX, for M. Tom Christopher.

Charles C. Frederiksen, Attorney at Law, Fulbright & Jaworski, Dallas, TX, Dallas, TX, for Richard Wadsworth.

Charles Allen Gall, Attorney at Law, Jenkens & Gilchrist, Dallas, TX, Clarence L. Pozza, Attorney at Law, Miller, Canfield, Paddock & Stone, Detroit, MI, David A. French, Attorney at Law, Sonal H. Mithani, Attorney at Law, Miller, Canfield, Paddock & Stone, Ann Arbor, MI, for Conrad Kalitta.

### *ORDER*

SOLIS, District Judge.

Before this Court is the Proposed Kitty Hawk Lead Plaintiff's Motion for Appointment as Lead Plaintiffs and for Approval of Their Selection of Lead Counsel, filed June 19, 2000, Statement in Response to Proposed Kitty Hawk Lead Plaintiff's Motion for Appointment for Lead Plaintiff and for Approval of Their Selection of Lead Counsel, filed July 19, 2000, and Proposed Kitty Hawk Lead Plaintiffs' Reply to the Defendants' Statement in Response, July 25, 2000. *The Court finds the notice in the case inadequate* and orders Plaintiffs to act as specified herein, GRANTS provisionally the motion to appoint lead plaintiffs, GRANTS provisionally the motion to appoint co-lead counsel, and GRANTS provisionally the motion to appoint liaison counsel.

## BACKGROUND

Before the Court is the consolidation of four securities class actions alleging violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as amended by the Private Securities Reform Act of 1995, 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b–5). Plaintiff Todd Holley originally filed this action individually and on behalf of all those who purchased common stock of Kitty Hawk Inc. ("Kitty Hawk") between April 22, 1999 and April 11, 2000. Holley claims that the defendants disseminated materially false and misleading statements regarding Kitty Hawk.

Alpine Aviation, Inc., Abraham Mathew, David Anders, and David Reedy ("the Proposed Kitty Hawk Lead Plaintiffs") and additional class members seek appointment as Lead Plaintiffs in the action pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The same movants seek approval of the appointment of the law firms of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") and Cauley & Geller LLP as Co–Lead Counsel.

The PSLRA establishes a procedure governing the appointment of a lead plaintiff and lead counsel in private actions arising under the Securities Exchange Act that is brought by a plaintiff class action pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. §§ 78u–4(a)(1) and (a)(3)(B)(i). The Court considers the requirements in turn.

### A. Sworn Certifications

The PSLRA requires each potential lead plaintiff to certify the following: the plaintiff has reviewed the complaint and authorized its filing; the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action under the Securities Exchange Act; the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary; a listing of all the transactions of the plaintiff in the security in question during

the complaint's class period; a listing of any other actions under the Act in which the plaintiff has sought to serve as lead plaintiff in the last three years; that the plaintiff will not accept any payment for serving as lead plaintiff beyond the plaintiff's pro rata share of any recovery, except as approved by the court in accordance with the provisions of the Act. 15 U.S.C. § 78u–4(a)(2)(A). All four proposed lead plaintiffs have completed the required certification.

## B. Notice

### 1. Court's Obligation to Consider Defendant's "Statement in Response"

■ 15 U.S.C. § 78u–4(a)(3)(B)(i) provides that "the court shall consider any motion made by a purported class member in response to the notice...." Section 78u–4(a)(3)(B)(iii) instructs the court to adopt a presumption that the most adequate plaintiff is the group that either filed the complaint or made a motion in response to the notice of suit, has the largest financial interest in the relief sought by the class, and otherwise satisfies Fed.R.Civ.P. 23. Respondents to Plaintiff's Motion do not purport to be class members. Indeed, they are the defendants in this case. The plain language of the statutory provisions does not provide for the defendants to weigh in on who should represent the plaintiffs. *Id.* Courts agree that generally, Defendants cannot rebut the presumption of adequacy regarding Plaintiff's motion to serve as lead plaintiff. *See Gluck v. CellStar Corp.,* 976 F.Supp. 542, 550 (N.D.Tex.1997) ("The statute is clear that only potential plaintiffs may be heard regarding appointment of a Lead Plaintiff."); *Fischler v. AmSouth Bancorporation,* 1997 WL 118429 at *2 (M.D. Fla. Feb 7, 1997) ("The plain language of the PSLRA dictates only members of the plaintiff class may offer evidence to rebut the presumption in favor of the most adequate plaintiff."); *See Greebel v. FTP Software,* 939 F.Supp. 57, 60 (D.Mass.1996). However, Defendants may challenge the failure of the named plaintiff to file a certification with the complaint or to serve notice to class members. *Greebel,* 939 F.Supp. at 60. While there is not a challenge to certification, Defendants have challenged the adequacy of

Plaintiffs' notice. The Court will consider Defendants' argument on the grounds of inadequate notice. *But see King v. Livent, Inc.,* 36 F.Supp.2d 187 (S.D.N.Y.1999) (finding court may consider Defendant's arguments).

The Defendants do not have standing to lodge their remaining objections or statements. Thus, the Court *at this time* is not obliged to consider the portions of Defendants' brief pertaining to purchase of shares beyond the alleged class period, any disparity in the proposed lead plaintiffs' stakes, the "revolving door in and out of lead plaintiff status," the prematurity of the motion, confusion among lead counsel, and the role of other counsel.

### 2. Adequacy of Notice

■ Under the PSLRA, within 20 days of filing a complaint under the Act, a notice must advise members of the proposed class "of the pendency of the action, the claims asserted therein, and the purported class period" as well as that "any member of the purported class may move the court to serve as lead plaintiff" within 60 days after publication of the notice. 15 U.S.C. § 78u–4(a)(3)(A)(i). Preliminarily, Plaintiff's publication in Business Wire is a sufficient form of notice; other courts have so found, and in the absence of dispute, this Court agrees. *See, e.g., Greebel,* at 939 F.Supp. at 62–64; *In re Lucent Technologies, Inc., Securities Litigation,* 194 F.R.D. 137 (D.N.J.2000). Further, the notice was given the day after the complaint was filed.

Moving to the substance of the notice, first, the notice advises the purported class of the pendency of an action:

> The Law Firm of Cauley & Geller, LLP announced today that it has filed a class action in the United States District Court for the Northern District of Texas on behalf of all individuals and institutional investors that purchased the common stock of Kitty Hawk, Inc ... (Nasdaq: KTTY), now (Nasdaq:KTTYE) between April 22, 1999 and April 11, 2000, inclusive....

Pl's App. B. Second, the notice makes clear what claims are asserted by charging officers

and directors with violating federal securities laws by providing materially false and misleading information about the Company's financial results. *Id.* The notice goes on to describe the basis for the charges and the effect of the conduct in question. *Id.* Third, the purported class period is clearly indicated as running between April 22, 1999 and April 11, 2000. *Id.*

Defendants assert that the notice did not put purported class members on sufficient notice of their ability or need to move to act as lead plaintiff. The notice states:

> If you have any questions about how you may be able to recover your losses, or if you would like to consider serving as one of the lead plaintiffs in this lawsuit, you must take appropriate action within 60 days of today. You are encouraged to call or e-mail the Firm.

(contact information follows). *Id.* Such publication must put class members on notice that they have 60 days to take action to seek appointment as lead plaintiff. Defendant cites *In re Lucent Technologies, Inc. Securities Litigation* for the proposition that "[n]otice under the PSLRA should be neither technical nor uninformative nor misleading. It must be 'reasonably calculated ... to apprise [a potential lead plaintiff] of the pendency of the action and offer [it, him, or her] an opportunity to [move the Court to serve as lead plaintiff.]' " *In re Lucent Technologies,* 194 F.R.D. 137, 146 (D.N.J.2000). This case is instructive, though it is not identical since the notice in that case did not specify that someone wishing to serve as lead plaintiff must act within 60 days.

The notice in this case did not specify that members seeking appointment as lead plaintiffs should "move the court" to do so as specified by the statute, only that they should take "appropriate action." In *Burke v. Ruttenberg,* the district court found a notice stating "you may seek to join in the above class action on or no later than sixty days from [the notice publication date]" as inadequate under § 78u–4(a)(3)(A)(i). *See* 102 F.Supp.2d 1280, 1313–1314 (N.D.Ala. 2000). "[T]he purported notice absolutely fails to inform class members of a right to move the district court to serve as lead plain-

tiff. The requirement that the notice inform putative class members of their right to move the district court to be appointed lead plaintiff is clearly stated in [subsection 78u–4(a)(3)(A)(i)(II)]." *Id.* at 1314. The opinion explains that the relevant PSLRA provisions "were put in place to prevent professional plaintiffs and self-serving counsel from hijacking securities actions and forcing unfair settlements down the throats of defendant companies and shareholders alike." *Id.* The *Ruttenberg* court found that the lack of notice disserved the PSLRA's goal of reducing the power of lawyers over the litigation process in favor of plaintiffs, and declared:

> Publication by counsel of notice that attempts to skirt this implicit goal by requiring members of the purported class to contact counsel is inherently defective, regardless of whether the demand is made explicitly, through extended exhortation to call counsel, or impliedly, by counsel's failing to include adequate information, such as the class members' right to move the court to be appointed lead plaintiff.

*Id.* at 1314. The Court found the notice to be geared toward funneling potential lead plaintiffs through the law firm rather than permitting them to come to the Court and assert lead plaintiff status. *Id.* at 1314–15. The Court went on to reject language similar to that of the notice in the case before this Court: "If you wish to discuss this action or have any questions concerning this notice or your rights or interests with respect to these matters, please contact, at Milberg Weiss ..." *Id.* at 1315. Milberg Weiss' notice did include notice of the right to move the district court to serve as lead plaintiff, unlike the case before this Court. *Id.* Yet the Court also criticized the notices before it for "essentially requir[ing] interested class members to contact the counsel named therein before taking any further action." *Id.* at 1318.

The result of the two quoted sentences of the notice is clear: the notice implies that potential lead plaintiffs should contact the law firm of Cauley and Geller LLP in order to participate in the case. *See* Pl's App. B. This is result is contrary to the potential lead plaintiffs' actual right to contact the court

independent of the lawyers involved in the case. This result is also clearly contrary to the intent of the PSLRA to permit plaintiffs greater control over the litigation instead of permitting lawyer-driven litigation. The notice is thus inadequate.

Nor does the notice give the style of the case, case number, or an indication of which location within the Northern District of Texas that this case was filed. A potential plaintiff who might seek to contact the court would not know the name of the plaintiff, nor necessarily how the defendant is named in the case. *Ruttenberg,* 102 F.Supp.2d at 1314–15. Nor is it clear by the notice what statutory provisions or other law Plaintiff's claims fall under.

### 3. Remedy

The Court need not dismiss the class claims or motions for appointment of lead plaintiff or lead counsel because of the defective published notice. *See Ruttenberg,* 102 F.Supp.2d at 1318; *In re Network Assoc., Inc. Securities Litig.,* 76 F.Supp.2d 1017, 1032 (N.D.Cal.1999). *See also Griffin v. PaineWebber Inc.,* 84 F.Supp.2d 508, 514 (S.D.N.Y.2000). *Instead, the Court will appoint temporary lead plaintiffs. See Ruttenberg,* 102 F.Supp.2d at 1318. The lead plaintiffs shall file *with the Court and at the same time serve on Defendants a proposed section 78u–4(a)(3)(A) notice that comports with this opinion.* Any questions about how much information needs to be included in the notice should be resolved by erring on the side of including more information. Defendants *shall have 10 days from the filing of Plaintiffs'* proposal to file a response with the Court. After review and possible alteration by this Court, the notice shall promptly be published by the lead plaintiffs in conformance with § 78u–4(a)(3)(A)(i), with a copy to be filed with the Court. The Court will then consider any responses to the notice filed with the Court and will decide the permanent appointment of lead plaintiffs and lead counsel between those it appoints today and the other responses it receives within the statutory period. The Court notes that after consolidation, no other petitions for appointment as lead plaintiff or counsel were filed.

### C. Appointment of Lead Plaintiffs—The Presumptively Most Adequate Plaintiff

15 U.S.C. § 78u–4(a)(3)(B)(iii) creates a rebuttable presumption that the most adequate Plaintiff is the person or group of persons that timely filed their motion in response to the published notice of the suit, has the largest financial interest in the relief sought by the class, and otherwise satisfies Federal Rule of Civil Procedure 23.

#### (1) Timely filing

The Motion for Appointment as Lead Plaintiffs by any member of the purported class must be made within 60 days after the publication of the notice of suit as required by 15 U.S.C. § 78u–4(a)(3)(A). Notice was published by the Plaintiff in the Holley action of a suit against Kitty Hawk on April 20, 2000, the last day permitted by the statute. *See* Decl. of Schulman (att. to Pl's Motion); Pl.'s App. B. Plaintiffs' current Motion was filed June 19, 2000. Accordingly, the Motion is timely.

#### (2) Largest financial interest and aggregation of plaintiffs

[3] The second criterion to gain the presumption is to have, in the determination of the court, the largest financial interest in the relief sought by the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). The proposed lead plaintiffs allege that they have lost $466,387.38, certainly a substantial sum. The largest financial interest requirement is met regardless of whether another aggregated group might hold a greater financial interest in the outcome of this case. This Court agrees with courts that have found that when there are no other parties seeking to be appointed lead plaintiff, the moving parties have the largest financial interest. *See Greebel v. FTP Software,* 939 F.Supp. 57, 64 (D.Mass.1996); *Squyres v. Union Texas Petroleum Holdings, Inc.,* 1998 WL 1144586 (C.D.Cal.1998).

At this juncture, the Court must decide whether aggregating the plaintiffs into one group of co-lead plaintiffs is appropriate. Courts are divided over whether multiple

plaintiffs may be aggregated to satisfy the "largest financial interest" requirement. *See Yousefi v. Lockheed Martin Corp.,* 70 F.Supp.2d 1061, 1067 (C.D.Cal.1999). Though the proposed Kitty Hawk Lead plaintiffs need not all aggregate to satisfy the largest financial interest requirement in the absence of opposition from competing potential lead plaintiffs, many Courts are still skeptical of appointing co-lead plaintiffs. *See generally Burke v. Ruttenberg,* 102 F.Supp.2d 1280, 1322–1338 (N.D.Ala.2000) (discussing at length whether to aggregate plaintiffs into one lead plaintiff group). One Court declined to aggregate two institutional investors and four individuals to serve as lead plaintiffs, fearing that grouping unrelated members together would cede too much power to the attorneys, contrary to the intent of the PSLRA. *See In re Donnkenny Inc. Securities Litigation,* 171 F.R.D. 156, 157–58 (S.D.N.Y.1997). However, "the majority of courts addressing this issue have permitted the aggregation of claims," as multiple plaintiffs are permitted by the Act. *Lockheed Martin,* 70 F.Supp.2d at 1070 (listing a selection of courts). Aggregation has been permitted even where the plaintiffs are wholly unrelated to each other outside of the class action, as long as no party or class member opposes the motion. *See id.* at 1067. Often courts have denied applications for one hundred or more plaintiffs to be aggregated but permitted groups of six or less to serve together. *See id. See, e.g. In re Advanced Tissue Sciences Securities Litigation,* 184 F.R.D. 346, 352 (S.D.Cal.1998) (denying appointment to group of 250 unrelated investors); *Chill v. Green Tree Financial Corp.,* 181 F.R.D. 398, 408–09 (D.Minn.1998) (rejecting a group of 300 but accepting a group of six). The Court sees no textual statutory obstacle to considering the four plaintiffs' financial interests together. Nevertheless, the Court will consider whether grouping the four plaintiffs offers advantages that counterbalance the disservice to the Act's interest in creating a small number of lead plaintiffs to counterbalance the influence of lawyers. The Court favors the "rule of reason" employed on a case by case inquiry to decide whether a certain group is appropriately compact. *See Chill,* 181 F.R.D. at 409 (em-

ploying rule of reason standard in considering a group of six, and ordering the submission of a twenty-person group representing both large institutional and small investors). *See also In re Oxford Health Plans, Inc., Securities Litigation,* 182 F.R.D. 42, 49 (S.D.N.Y.1998) (finding that diversity among plaintiffs helps ensure that all class members' interests are represented). *But see Ruttenberg,* 102 F.Supp.2d at 1326–38 (disfavoring a diversity rationale for large groups and favoring a strict inquiry to find the minimum number of lead plaintiffs necessary).

In this case, the selection of four plaintiffs does not unreasonably disrupt the lead plaintiff group's ability to control the lawyers while keeping the group's decisionmaking from becoming unwieldy. The inclusion of one corporation and three individuals helps create balance among the demographics of the lead plaintiff group members, and improves diversity of experience. The Court is not dissuaded by the difference in losses suffered by the proposed lead plaintiffs, since the proposed lead plaintiffs all seek to maximize the class's recovery. *See In re Oxford Health Plans,* 182 F.R.D. at 49 (discussing two plaintiffs groups each with separate counsel). Nor are purchases outside of the class period a bar to serving together as a lead plaintiff group, since the proposed lead plaintiffs are still class members seeking a common recovery, and there is no adequate demonstration that their interests diverge at the liability stage of trial. *In re Reliance Acceptance Group, Inc.,* 1998 WL 388260, at *5 (W.D.Tex.1998) (finding that different times of purchase of stock among plaintiffs should not bar appointment of lead plaintiffs since the differences relate only to damages) (U.S. Magistrate Judge); *Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975) ("[C]ourts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit."). Plaintiffs' motion states that the other movants besides the proposed lead plaintiffs support this motion, and stand ready to serve as lead plaintiffs. The other movants *have not satisfied the requirements of the PSLRA,* and the Court sees no reason to

appoint them. The Court will not consider the other movants for lead plaintiff status.

### (3) *Rule 23 requirements*

The lead Plaintiff must further satisfy Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B). At this stage of the proceedings, the Court need only consider briefly the adequacy and typicality of the proposed lead plaintiffs, as all the requirements of Rule 23 will be examined in greater detail at the class certification hearing. *See CellStar,* 976 F.Supp. at 546; *California Public Employees' Retirement System v. The Chubb Corporation,* 127 F.Supp.2d 572, 578 (D.N.J.2001); *Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 587 (N.D.Cal.1999); *Fischler v. AmSouth Bancorporation,* 1997 WL 118429 at *2 (M.D.Fla.1997). *See also D'Hondt v. Digi International, Inc.,* 1997 WL 405668, at *2 (D.Minn.1997) (Congress did not express an intent to require an aggressive inquiry into the qualifications of a claimant to serve as lead plaintiff).

The claims of the lead plaintiffs must be typical of the claims of the class. Judging from the nature of the claims presented to the Court, proof of the injury and losses resulting from defendants' alleged misrepresentations would prove the claims of the lead plaintiffs and other claimants alike. *See CellStar,* 976 F.Supp. at 546. The Court is aware of no differences among the class members that would substantially alter the proof required for one member's claims versus another's. Thus, for the purpose of appointing a lead plaintiff, the claims of the lead plaintiffs are typical of those of the purported class members. *See id.* Additionally, the lead plaintiff group must fairly and adequately protect the interests of the class. Each member of the lead plaintiff group has a substantial sum at stake. Unfortunately, the lead plaintiff group does not include an institutional investor, who would have acted in the role of a fiduciary before, and whom Congress intended to step forward to lead securities class actions. *See id.* Yet the group members have significant interests in the litigation and no apparent potential conflicts between the named plaintiffs and class counsel; further, they have chosen competent counsel. *See CellStar,* 976 F.Supp. at 546; *Modell v. Eliot Savings Bank,* 139 F.R.D. 17, 23 (D.Mass.1991) (requiring lack of conflict between class representatives and class, as well as qualified and experienced counsel who will vigorously conduct the litigation), *citing Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir.1985). Thus, for the purpose of appointing a lead plaintiff, the proposed lead plaintiff group is an adequate representative of the class.

Consequently, the proposed lead plaintiffs have satisfied the presumption that they are the most adequate plaintiffs under the PSLRA. Since there is no rebuttal from other class members, the proposed class members *Alpine Aviation, Inc., Abraham Mathew, David Anders, and David Reedy are approved as lead plaintiffs,* serving provisionally as stated above in the discussion of notice.

### D. Appointment of Lead Plaintiff's Counsel

The PSLRA provides guidance for the appointment of lead counsel, stating, "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). The movants in this case, including the lead plaintiffs, seek to appoint two law firms as co-lead counsel: Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") and Cauley & Geller LLP. The Court has reviewed the resume of each firm and is satisfied that each firm could adequately represent the plaintiff class in this action.

Different jurisdictions give the issue of lead counsel selection different scrutiny. One jurisdiction applied the standard for approving lead plaintiffs to the appointment of three co-lead counsel in refusing to upset the lead plaintiff's choice of counsel since it did not appear necessary to "protect the interests of the class." *Takeda v. Turbodyne Technologies, Inc.,* 67 F.Supp.2d 1129, 1139 (C.D.Cal.1999) (applying 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa)). *See also In re Donnkenny Inc. Securities Litigation,* 171 F.R.D. 156, 158 (S.D.N.Y.1997) (approving lead plaintiff's choice of two lead counsel "provid-

ed that there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses."). The *Turbodyne* court permitted the hiring of three lead counsel, citing the geographic diversity of the lead counsel as a boon to efficient handling of the case, and stating the court's intention to scrutinize the request for attorneys' fees to avoid duplication of services. *See* 67 F.Supp.2d at 1139.

Another jurisdiction applied a more probing analysis, considering the potential for duplicative services and attorneys' fees, the potential for conflict among lead counsel, the lead plaintiff's ability to control more than one law firm, the ability of one firm to handle the litigation alone, and whether the lead counsel arrangement resulted from negotiations between lead plaintiff and lead attorneys that was at arms length or as a result of bargaining among the lawyers. *See In re Milestone Scientific Securities Litigation,* 187 F.R.D. 165, 176–77 (D.N.J.1999); *In re Nice Systems Securities Litigation,* 188 F.R.D. 206, 221–24 (D.N.J.1999). *See also In re Telxon Corp. Securities Litigation,* 67 F.Supp.2d 803, 817 (N.D.Ohio 1999) (rejecting a three-tiered counsel structure composed of three lead counsel, an executive committee, and a liaison counsel). The New Jersey cases indicate skepticism whether courts can expose duplication of services among attorneys after the representation concludes. While limiting the lead and liaison counsel, these cases bestow a very broad privilege of enlisting the help of other firms, permitting lead counsel to distribute nonduplicative work assignments to non-lead counsel to facilitate the orderly and efficient prosecution of the case, including in order to spread the risk of the litigation. *Milestone,* 187 F.R.D. at 181; *Nice Systems,* 188 F.R.D. at 224.

*The Court is skeptical of the need to appoint two law firms as lead counsel in this case.* The total losses listed by the moving plaintiffs in its exhibit (D) is approximately $1 million, which is no small sum, but would not in itself compel the Court to find that two law firms need to manage the case. The Court has no information before it estimating the size of the entire class's damages in this case. Nor does the Court see why this action is particularly complex or beyond the capabilities of each of the proposed lead firms individually. The Court notes that Cauley & Geller published the original notice in this case, a notice which the Court has found to unduly direct class members to the Cauley & Geller law firm. The Court further notes the frequency with which the law firm of Milberg Weiss appears in the cases discussed in this Court's opinion, which in conjunction with their resume suggests their great experience in the securities class action realm.

However, the Court notes the lead counsels' interest in spreading the risk of the litigation between the two lead counsel firms. The two firms are geographically disparate. Further, having several lead plaintiffs increases the lead plaintiffs' ability to control co-lead counsel rather than have lawyers dominate the litigation decisions. The Court approves the choice of co-lead counsel provisionally as discussed above with the further proviso that the *Court will scrutinize counsel's services for duplication when awarding attorney's fees.* The appointment is provisional, dependent upon the permanent appointment of lead plaintiffs, as discussed above.

Second, the law firm of Stanley Mandel & Iola LLP ("Stanley") is the first law firm signing the movants' Motion. This firm is not otherwise mentioned within the Motion. Only in Plaintiffs' Reply do the movants make clear that Stanley would serve as liaison counsel, and in effect also serve as local counsel for the lead counsel in this case. Stanley would advise lead counsel on local procedural matters, create and maintain a master list of all parties and their respective counsel, distribute communications between the Court and counsel, apprise counsel of developments and scheduling matters in the case, and generally assist in the coordination of the case. The Court approves the appointment of Stanley as *liaison counsel temporarily as discussed above with the further proviso that Stanley's role be limited to the procedural advice and services specified above.* Compensation will be awarded according to only those duties listed above,

strictly construed. The Court will not permit both Stanley and the lead counsel to be compensated for any duplication of services among the law firms. The appointment is provisional, dependent upon the permanent appointment of lead plaintiffs, as discussed above.

Third, the other firms listed as signatories to the Motion have not sought appointment to any role in this action. Those firms will have no lead plaintiff counsel or liaison counsel role in this case. Lead counsel are still permitted to distribute non-duplicative work assignments to non-lead counsel to facilitate the orderly and efficient prosecution of the case, including in order to spread the risk of the litigation.