Robert and Geraldine SOFRAN, individually and on behalf of all others similarly situated, Plaintiffs,

v.

LABRANCHE & CO., INC., G. Michael Labranche, Robert Murphy, Alfred O. Haywood, Jr., William J. Burke, III, and Harvey S. Traison, Defendants.

Todd Semon, Plaintiff,

v.

LaBranche & Co., Inc. et al., Defendants.

Martin Huag, Plaintiff,

v.

LaBranche & Co., Inc. et al.,

Eugene Murphy, Plaintiff,

v.

LaBranche & Co., Inc. et al.,

Charles E. Strain, Plaintiff,

v.

LaBranche & Co., Inc. et al.,

Jack G. Yopp, Plaintiff,

v.

LaBranche & Co., Inc. et al.,

Theodore V. Ferris, Plaintiff,

v.

LaBranche & Co., Inc. et al.,

Jonathan Levin, Plaintiff,

v.

LaBranche & Co., Inc. et al.,

Nos. 03 Civ. 8201(RWS), 03 Civ 8255(RWS), 03 Civ. 8265(RWS), 03 Civ. 8462(RWS), 03 Civ. 8509(RWS), 03 Civ. 8783(RWS), 03 Civ. 8806(RWS), 03 Civ. 8918(RWS).

United States District Court, S.D. New York.

March 22, 2004.

Schiffrin & Barroway, Bala Cynwyd, PA, By: Andrew L. Barroway, Stuart L. Berman, Darren J. Check, of counsel, Cauley Geller Bowman & Rudman, Melville, NY, By: Samuel H. Rudman, David A. Rosenfeld, Mario Alba, Jr., of counsel, Lead Counsel for Plaintiff.

Schiffrin & Barroway, Bala Cynwyd, PA, By: Marc A. Topaz, of counsel, Curtis V. Trinko, New York City, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, By: Peter E. Seidman, Andrei V. Rado, of counsel, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, By: Fred Taylor Isquith, of counsel, Schatz & Nobel, Hartford, CT, By: Patrick Anthony Klingman, of counsel, Lovell, Stewart, Halebian, New York City, By: Christopher Lovell, of counsel, Scott & Scott, Colchester, CT, By: David Arthur Scott, of counsel, Lasky & Rifkind, New York City, By: Norman Rifkind, of counsel, Weiss & Yourman, New York City, By: Joseph H. Weiss, of counsel, Robin, Murray & Frank, New York City, By: Eric J. Belfi, of counsel, Entwistle & Cappucci, New York City, By: Vincent R. Cappucci, of counsel, Schatz & Nobel, Hartford, CT, By: Nancy A. Kalesa, of counsel, Abbey Gardy, New York City, By: Susan Lee, of counsel, Charles J. Piven, Baltimore, MD, Faruqi & Faruqi, New York City, By: Nadeem Faruqi, of counsel, Marc S. Henzel, Bala Cynwyd, PA, Wolf Popper, New York City, By: James A. Harrod, of counsel, for plaintiffs.

*OPINION*

SWEET, Senior District Judge.

The above-captioned cases are actions for securities fraud brought on behalf of shareholders of LaBranche & Co., Inc. ("LaBranche"), seeking damages for violations of Section 10(b) and Section 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), as amended, 15 U.S.C. §§ 78t(a) and 78j(b), and Rule 10b–5 promulgated thereunder. 17 C.F.R. § 240.10b–5.

Two groups of investors who have sustained losses as a result of their investment in LaBranche have moved for consolidation of the related cases and for appointment as lead plaintiffs of a proposed class of persons or entities who purchased or acquired the securities of LaBranche between August 19, 1999 and October 15, 2003 (the "Class Period."). In addition, each proposed lead plaintiff has requested its choice of lead counsel in the litigation.

The first group, consisting of investors Anthony Johnson, Clyde Farmer, Edwin Walthall, Donald Stahl and City of Harper Woods Retirement System (collectively, the "Harper Woods Group") have lost approximately $52,099.78 in connection with their purchases of LaBranche securities during the Class Period. The second group, consisting of Joseph C. Eckrich as Custodian for Alexander and Estelle Eckrich, Dorothy J. Johnson, G. Ronald Stallings, Allen Routzahn, Betty M. Mickey, and Merl Williams (collectively, the "Williams Group") have lost approximately $27,176.90 in connection with their purchases of LaBranche securities during the Class Period.

For the reasons set forth below, each of the related actions are consolidated, the motion for appointment of the Harper Woods Group is granted, the motion for appointment of the Williams Group is denied, and the Harper Woods Group's choice of lead counsel is approved.

### Prior Proceedings

The first of the above-captioned actions was commenced on or about October 16, 2003. Pursuant to 15 U.S.C. § 78u–4(a)(3)(A)(I), on October 16, 2003, the first notice that a class action had been initiated against defendants was published over the *PR Newswire. See In re Party City Securities Litigation*, 189 F.R.D. 91, 105 (D.N.J. 1999) (holding that the notification requirement had been met by the publication of "the notice of pendency of the instant action in a widely-circulated national business-oriented wire service, the *PR Newswire.*"). The notice indicated that applications for appointment as lead plaintiff were to be made no later than December 15, 2003.

The Harper Woods Group and the Williams Group both filed motions to be appointed as lead plaintiffs on December 15, 2003. After submission of briefs, the motion was argued on February 11, 2004, at which time it was deemed fully submitted.

### The Related Cases Are Consolidated

■ Both groups of plaintiffs have requested consolidation. Each of the above-captioned actions involves class action claims on behalf of class members who purchased or otherwise acquired LaBranche securities during the Class Period. Each of the actions asserts essentially similar and overlapping claims brought on behalf of purchasers of LaBranche securities who purchased in reliance of the materially false and misleading statements and omissions at all relevant times. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed.R.Civ.P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990). Accordingly, the cases are hereby consolidated under the caption *In re LaBranche Securities Litigation.*

### The Harper Woods Group is Appointed as Lead Plaintiffs

■ The Private Securities Litigation Reform Act ("PSLRA") sets forth a procedure governing the appointment of a lead plaintiff or plaintiffs in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(A)(I). As indicated above, plaintiff in the first-filed action filed a notice in *PR Newswire*, which is deemed to satisfy the notice requirement.

Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as lead plaintiff(s). 15 U.S.C. § 78u–4(a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiffs the member or members of that class that the Court determines to be most capable of adequately representing the interests of the class members. 15 U.S.C. § 78u–4(3)(B)(I). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that–
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii); *see also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y.2003); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F.Supp.2d 344, 347 (S.D.N.Y.2002).

■ Both the Harper Woods Group and the Williams Groups have timely filed their motion to be appointed lead plaintiffs along with their certifications attesting to their transactions in LaBranche securities during the Class Period. Because the Harper

Woods Group has lost the most money in connection with the purchase of LaBranche securities—a fact that the Williams Group has not contested—that group is deemed the most adequate plaintiff so long as it fulfills the remaining statutory requirements. As the Ninth Circuit recently held:

> Once ... the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements. That the district court believes another plaintiff may be "more typical" or "more adequate" is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.

*In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir.2002).

The Harper Woods Groups does satisfy the requirements of Rule 23. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

■ Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, "[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Weinberg*, 216 F.R.D. at 252 (*citing In re Crayfish Co. Sec. Litig.*, 00 Civ. 6766, 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y.2001)). "In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litiga-tion] and should be left for consideration of a motion for class certification.'" *Id.* (*quoting In re Party City*, 189 F.R.D. 91, 106 (D.N.J.1999)).

■ The Harper Woods Group satisfies the typicality requirements. Typicality exists if claims "arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed sub nom. Hart Holding Co. Inc. v. Drexel Burnham Lambert Group, Inc.*, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993). However, the claims of the class representatives need not be identical to the claims of the class to satisfy typicality. Instead, courts have recognized that

> The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.

*In re Prudential Securities, Inc. Ltd. Partnerships Litigation*, 163 F.R.D. 200, 208 (S.D.N.Y.1995).

The Harper Woods Group seeks to represent a class of purchasers of LaBranche common stock who have identical, non-competing and non-conflicting interests. The members of the Group satisfy the typicality requirement because they: (1) purchased or acquired LaBranche securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' allegedly materially false and misleading statements and/or omissions; and (3) suffered damages thereby. The claims are typical of those of other class members because their claims and the claims of other class members arise out of the same course of events. *See Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440, 445 (E.D.N.Y.1995) (typicality requirement satisfied because movant's claims arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.").

■ Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." In order

[t]o satisfy the adequacy requirement of Rule 23(a), "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation."

*In re AOL Time Warner, Inc. Securities and "ERISA" Litigation,* No. MDL 1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan.10, 2003) (*quoting Jackson v. Foley,* 156 F.R.D. 538, 543 (E.D.N.Y.1994)). As evidenced by the injury suffered by the investors in the Harper Woods Group who purchased shares of LaBranche common stock at prices allegedly inflated by defendants' violations of the federal securities laws, the interests of the Group is clearly aligned with the members of the class, and there is no evidence of any antagonism between the interests of the Group and those of other members of the class. In addition, the proposed lead counsel is highly qualified, experienced, and able to conduct this litigation in a professional manner. The Harper Woods Group has accordingly satisfied the adequacy requirements of Rule 23.

In the third and final step, the competing plaintiffs are given the opportunity to rebut the presumption that the Harper Woods Group is the most adequate plaintiff. "That presumption can be rebutted 'only upon proof by a member of the purported plaintiff class' that the presumptive lead plaintiff 'will not fairly and adequately protect the interests of the class' or is subject to 'unique defenses' that prevent the plaintiff from adequately representing the class." *In re WorldCom, Inc. Securities Litigation,* 294 F.Supp.2d 392, 421 (S.D.N.Y.2003) (*quoting* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).

The Williams Group makes three arguments to rebut the presumptive adequacy of the Harper Woods Group: (1) the certifications provided by the Harper Woods Group are inadequate to demonstrate their understanding of the litigation and their willingness to serve as lead plaintiffs; (2) the City of Harper Woods Retirement System (the "CHWRS") does not have standing to pursue this action; and (3) institutional lead plaintiffs are prone to dropping out as lead plaintiffs due to conflicts or other reasons. Each of these reasons is insufficient to rebut the presumption of the adequacy of the Harper Woods Group.

As the Harper Woods Group argues, it has executed and submitted the precise certifications required under the PSLRA. *See* 15 U.S.C. § 78u–4(a)(2)(A) (laying out the content of the sworn certifications to be provided by proposed lead plaintiffs). The Williams Group has cited no case which requires that the certifications include language beyond the statutory requirements. The certifications provided by the Harper Woods Group are therefore sufficient.

The Williams Group argues that because the CHWRS is not the beneficial owner of the shares reported on its certification, and because the shares are held beneficially for its clients, it has no standing to pursue an action because it has provided no evidence from its clients that it has been authorized to sue on their behalf. To support the point, the Williams Group cites a number of pre-PSLRA cases for the proposition that only purchasers and sellers of the security at issue have standing to bring suit for violations of § 10(b) of the Exchange Act. *See e.g., Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 755, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The Williams Group, however, ignores the preference expressed by Congress for having institutional investors as lead plaintiffs, *see* House Conf. Rep. No. 104–369, 104th Cong. 1st Sess. at 34 (1995), U.S.Code Cong. & Admin.News 1995, p. 679 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."), as well as the numerous cases in which pension funds have been appointed as lead plaintiffs under the PSLRA. *See, e.g., In re MSC Indus. Direct Co., Inc.,* 283 F.Supp.2d 838, 841 (E.D.N.Y.2003) (noting that the court had previously appointed the International Association of Machinists National Pension Fund as lead plaintiff); *In re Network Associates Sec. Litig.,* 76 F.Supp.2d 1017, 1034 (N.D.Cal.1999) (appointing the Board of Pensions and Retire-

ment of the City of Philadelphia as lead plaintiff).

The Williams Group also cites a number of cases in which institutional lead plaintiffs have dropped out, either because of a conflict or because the obligations to their members makes representing an entire class of shareholders too daunting a task. *See e.g., In re Initial Public Offering Sec. Litig.,* 174 F.Supp.2d 61 (S.D.N.Y.2001); *Turberg v. CVS Corp.,* 1:01 CV 11464, 2001 WL 34131702 (D.Mass. Aug. 22, 2001). However, the Williams Group has provided no proof, as required by the PSLRA, that the Harper Woods Group is likely to drop out as lead plaintiff in this litigation. Without such proof, the citations to other cases provides only speculation as to such a possibility.

Finally, the Williams Group requests in the alternative that it be appointed as co-lead plaintiff with the CHWRS, arguing that "[d]iversity among the group members, which would then include an institutional investor and significant individual investors, would help insure that all class members' interests were represented." Williams Group Reply Mem. at 4. However, the Harper Woods Group already consists of an institutional investor and several individual investors. Accordingly, there is no reason to join the Williams Group as co-lead plaintiffs.

The motion for appointment of the Harper Woods Group as lead plaintiff is therefore granted, and the motion for the appointment of the Williams Group is denied.

### The Harper Woods Group's Choice of Counsel is Approved

Pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. In that regard, the Harper Woods Group has selected and retained Schiffrin & Barroway, LLP and Cauley Geller Bowman & Rudman, LLP to serve as lead counsel for the class. These firms have extensive experience in prosecuting complex securities actions and are well qualified to represent the class. *See Weinberg,* 216 F.R.D. at 256 (finding that "Schiffrin & Barroway has the requisite experience and expertise to serve as Lead Counsel."); *Holley v. Kitty Hawk, Inc.,* 200 F.R.D. 275, 281 (N.D.Tex.2001) (finding,

after reviewing the resume of Cauley Geller, that it "could adequately represent the plaintiff class in this action.").

Accordingly, the Harper Woods Groups may select Schriffin & Barroway, LLP and Cauley Geller Bowman & Rudman, LLP to serve as "co-lead counsel provided that there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses." *In re Donnkenny Inc. Securities Litigation,* 171 F.R.D. 156, 158 (S.D.N.Y.1997).

### Conclusion

For the reasons stated above, the above-captioned cases are consolidated, the motion of the Harper Woods Group to be appointed lead plaintiff is granted, the motion of the Williams Group to be appointed lead plaintiff is denied, and the request of the Harper Woods Group to appoint Schriffin & Barroway, LLP and Cauley Geller Bowman & Rudman, LLP to serve as co-lead counsel is granted.

It is so ordered.