## In re: LABRANCHE SECURITIES LITIGATION

### No. 03 CIV. 8201(RWS).

United States District Court, S.D. New York.

Aug. 27, 2004.

Cauley Geller Bowman & Rudman, Melville, NY (Samuel H. Rudman, Robert M. Rothman, David A. Rosenfeld, Mario Alba, Jr., of Counsel), Schiffrin & Barroway, Bala Cynwyd, PA (David Kessler, Marc I. Willner, of Counsel), Lead Counsel for Plaintiffs.

Weil, Gotshal & Manges LLP, New York, NY (Irwin H. Warren, Stephen A. Radin, of Counsel), Jones Day, New York, NY (E. Michael Bradley, Christopher A. Lisy, of Counsel), for Defendants.

## OPINION

SWEET, District Judge.

Lead Plaintiffs Anthony Johnson, Clyde Farmer, Edwin Walthall, Donald Stahl, and City of Harper Woods Retirement Systems (collectively, the "Lead Plaintiffs") have moved to modify the discovery stay set forth in Section 21D(b)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u–4(b)(3)(b). For the reasons set forth below, the motion is granted.

### Prior Proceedings

The Complaint in this action was filed on October 16, 2003 and has alleged that defendant LaBranche & Co. Inc. ("LaBranche") and certain of its executives (together with LaBranche, the "Defendants") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. LaBranche is a trading firm or "specialist" on the trading floor of the New York Stock Exchange (the "NYSE"), and is required to follow the rules and regulations of the NYSE. It was alleged that, in violation of those rules and regulations during the period 1999 to 2003, LaBranche repeatedly

engaged in an illegal scheme to drive up the company's reported revenues.

Specifically, the Complaint alleged that LaBranche's statements concerning its financial results during the class period were materially false and misleading because they failed to disclose and misrepresented the following adverse facts, among others: (1) that LaBranche wrongfully engaged in the illegal practice of "front-running" trades at the NYSE, which involved LaBranche wrongfully trading on nonpublic information in order to increase the firm's proprietary trading revenue; (2) that LaBranche illegally "traded ahead" of customer orders by causing or allowing its traders to put LaBranche's own interest ahead of investors by ignoring one investor order while in the process of interacting with another investor, thereby creating illegal profits for LaBranche; (3) that LaBranche, throughout the class period, improperly recognized revenue from its scheme in violation of Generally Accepted Accounting Principles ("GAAP"); and (4) that, as a result of this scheme, LaBranche materially overstated and artificially inflated its earnings, net income, and earnings per share, thereby causing LaBranche's common stock to trade at an artificially inflated price.

On March 22, 2004, this Court named lead plaintiffs and lead plaintiffs counsel and consolidated the various actions filed against LaBranche. *See Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398 (S.D.N.Y.2004).

The instant motion was filed on March 31, 2004, and was heard and marked fully submitted on May 19, 2004. The First Amended Complaint was filed on June 7, 2004, and a Corrected Consolidated Amended Class Action Complaint was filed on July 12, 2004.

## Background

The Securities and Exchange Commission (the "SEC") and the NYSE have investigated the allegedly wrongful activities of LaBranche. On September 26, 2003, the NYSE Division of Enforcement informed LaBranche representatives of its belief that interpositioning by LaBranche amounted to improper gains of millions of dollars during the three year period from 2000 to 2002.

On October 15, 2003, the NYSE Division of Enforcement informed LaBranche representatives that a new NYSE Market Surveillance Division study indicated that LaBranche also improperly "traded ahead" of customer orders placed on the "Designated Order Turnaround" or "DOT" system, and that this "specialist advantage" or "DOT inferior" trading amounted in the aggregate to approximately $38.5 million during the 2000 to 2002 period alone. On October 16, 2003, the NYSE announced that it had determined to bring disciplinary action against LaBranche and to seek substantial fines for its alleged trading ahead of customer orders during the 2000 to 2002 period.

On October 17, 2003, the SEC issued a formal order of investigation with respect to the specialist trading practices of LaBranche. In December 2003, the SEC and NYSE also indicated that they were expanding the period covered by the investigations to include 1998, 1999 and 2003.

On January 21, 2004, the staff of the SEC issued a "Wells Notice" notifying LaBranche that the staff was considering recommending that the SEC bring a civil enforcement action against LaBranche for violations of federal securities law and NYSE rules. LaBranche received a similar notice from the NYSE, which restated the NYSE's intent to bring a formal disciplinary proceeding against LaBranche for

possible violations of federal securities laws and NYSE rules.

On March 30, 2004, the SEC and NYSE announced the initiation and settlement of enforcement actions against LaBranche pursuant to which LaBranche will pay $63,518,760 in penalties and disgorgement, and implement steps to improve their compliance procedures and systems.

### The PSLRA Discovery Stay

The Lead Plaintiffs by this motion seek an order lifting the PSLRA's discovery stay to permit them to obtain copies of the documents that Defendants have produced to the SEC and the NYSE in connection with investigations by those agencies.

■ The PSLRA provides that discovery in a securities fraud class action is stayed while a motion to dismiss is pending:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4(b)(3)(b). The legislative history of the PSLRA indicates that Congress enacted the discovery stay to prevent plaintiffs from filing securities class actions with the intent of using the discovery process to force a coercive settlement. *See* H.R. Conf. Rep. No, 104–369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. Congress also enacted the mandatory stay of discovery to prevent plaintiffs from filing securities fraud lawsuits "as a vehicle 'in order to conduct discovery in the hopes of finding a sustainable claims not alleged in the complaint.'" *In re Vivendi Universal S.A., Sec. Litig.*, No. 02 Civ. 5571, 2003 WL 21035383, at *1 (S.D.N.Y. May 5, 2003); *In re AOL Time Warner Inc. Sec.*

*& "ERISA" Litig.*, No. 02 Civ. 5575, 2003 WL 21729842, at *1 (S.D.N.Y. July 21, 2003) (both quoting S.Rep. No. 104–98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693). "Manifest in the 1995 Reform Act is the mandate that courts assess the legal sufficiency of plaintiffs' securities fraud allegations according to what plaintiffs know at the time the complaint is filed, rather than what they wish to learn through discovery and recover from defendants merely by reason of commencing an action charging fraud." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 423 (S.D.N.Y.2001); *see also ATSI Communications, Inc. v. Shaar Fund, Ltd.*, No. 02 Civ. 8726, 2003 WL 1877227, at *2 (S.D.N.Y. Apr. 2, 2003) ("In view of Congress' manifest intention to protect defendants in actions such as this from the burden and expense of premature discovery, the statute precludes discovery ... until the court sustains the sufficiency of the complaint.").

Courts have modified the discovery stay in other securities class actions involving concurrent investigations by governmental agencies when doing so would not frustrate Congress' purposes in enacting the PSLRA. *See, e.g., In re Firstenergy Corp. Sec. Litig.*, 316 F.Supp.2d 581 (N.D.Ohio 2004) (lifting the discovery stay to permit lead plaintiffs to obtain documents produced to governmental entities); *Singer v. Nicor, Inc.*, No. 02 Civ. 5168, 2003 WL 22013905, at *2 (N.D.Ill. Apr.23, 2003) (lifting the discovery stay because plaintiffs would be disadvantaged if they did not have access to the documents previously provided to the government and other agencies); *In re Enron Sec. Derivative & "ERISA" Litig.*, No. MDL 1446, H–01–3624, 2002 WL 31845114, at *1 (S.D.Tex. Aug.16, 2002) (lifting the stay as to materials already made available to numerous government agencies and others); *In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d

301, 306 (S.D.N.Y.2002) (citing H.R. Conf. Rep. No. 104–369, at 37 (1995) and S.Rep. No. 104–98, at 14 (1995)); *see also In re Lernout & Hauspie Sec. Litig.*, 214 F.Supp.2d 100, 106 (D.Mass.2002) (permitting limited discovery where "[n]either of the perceived abuses addressed by Congress is present"); *Vacold LLC and Immunotherapy, Inc. v. Cerami*, No. 00 Civ. 4024, 2001 WL 167704, at *7 (S.D.N.Y. Feb.16, 2001) (modifying the discovery stay where the request "does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint").

Three recent cases in this District have denied the motions to modify the PSLRA stay. In *Vivendi*, the court denied a motion to lift the PSLRA stay with respect to "documents already produced by defendants to the United States Department of Justice, Securities and Exchange Commission, Commission Des Operations de' Bourse ('COB') and Association of Active Small Investors in France ('APPAC') ... produced in connection with civil and criminal investigations for misconduct by defendants," which formed the basis for the class action suit. *In re Vivendi*, 2003 WL 21035383, at *1. In *Rampersad v. Deutsche Bank Sec. Inc.*, No. 02 Civ. 7311, 2003 WL 21074094 (S.D.N.Y. May 9, 2003), the court denied a motion to lift the PSLRA stay with respect to documents provided to the government, rejecting the contention that "the PSLRA stay of discovery does not apply when the information sought has already been provided to a government agency." *Rampersad*, 2003 WL 210784094, at *2. In *AOL Time Warner*, the court held that "Lead Plaintiff has not demonstrated that exceptional circumstances are present in this case requiring production of documents previously produced to various government agencies." *In re AOL Time Warner*, 2003 WL 21729842, at *2.

"[D]istrict courts here and elsewhere have construed 'undue prejudice' [as the term is used in the PSLRA] to mean 'improper or unfair treatment amounting to something less than irreparable harm.'" *In re Vivendi*, 2003 WL 21035383, at *1 (quoting *Vacold*, 2001 WL 167704, at *6; *Med. Imaging Ctrs. Of Am., Inc. v. Lichtenstein*, 917 F.Supp. 717, 720 (S.D.Cal. 1996)). In this district, undue prejudice has been found in situations where plaintiffs are "prejudiced by [their] inability to make informed decisions about [their] litigation strategy in a rapidly shifting landscape" and when they are effectively "the only major interested party in the criminal and civil proceedings ... without access to documents that currently form the core of those proceedings." *In re WorldCom*, 234 F.Supp.2d at 305.

In *Firstenergy*, the court lifted the discovery stay on the ground that the plaintiffs in the securities class action would be unduly prejudiced without access to documents already made available to governmental entities because the securities plaintiffs would not be in a position to pursue informed litigation and settlement strategies. *See In re Firstenergy*, 316 F.Supp.2d at 591–92. Similarly, in *Nicor*, the court held that the plaintiffs would be unfairly disadvantaged if they did not have access to the documents the governmental and other agencies already had during the pendency of the motion to dismiss. *Nicor*, 2003 WL 22013905, at *2.

The courts in both *Firstenergy* and *Nicor* relied on *WorldCom* to reach their decisions. In that case, the Honorable Denise Cote held that the plaintiffs would be unduly prejudiced unless defendants provided them with the documents that defendants produced to regulatory agencies investigating the claims set forth in

the plaintiffs' complaint. *See In re World-Com*, 234 F.Supp.2d at 305.

■ In this case, the SEC and NYSE investigated and are continuing to investigate the precise schemes alleged by Lead Plaintiffs in the Complaint. As a result of those investigations, LaBranche has agreed to pay more than $63.5 million to settle the regulators' claims. If the stay remains in place, Lead Plaintiffs will be the only interested party without access to those documents and will be prejudiced by their inability to make informed decisions about their litigation strategy in this rapidly shifting landscape.

In *AOL Time Warner*, the court noted that while the plaintiffs claimed that settlement discussions between the defendants and the government were ongoing, it was "premature" for plaintiffs to assert that an *impending* settlement could prejudice their possible recovery. *See In re AOL Time Warner*, 2003 WL 21729842, at *1. Here, there has been an *actual* settlement. In both *Vivendi* and *Rampersad*, the defendants had not yet entered into settlement agreements with the regulators. In fact, in *Rampersad*, settlement negotiations were not even under way. Rather, the plaintiffs contended only that defendants had "come under governmental scrutiny." *Rampersad*, 2003 WL 21074094, at *2.

Defendants do not dispute that the legislative history of the PSLRA demonstrates that Congress enacted the discovery stay to prevent plaintiffs from filing securities class actions with the intent of using the discovery process to force a coercive settlement or to find a claim not alleged in the complaint. In this case, defendants have not contended that either of those stated goals would be frustrated were the stay lifted.

When deciding whether or not to lift the PSLRA's discovery stay, "it is customary to consider whether a production request places an undue burden on the party from which it is requested." *In re WorldCom*, 234 F.Supp.2d at 306. Here, the Lead Plaintiffs have agreed to pay production costs, and there will therefore be no costs incurred by Defendants in providing the requested discovery.

In *Firstenergy*, the court lifted the discovery stay when the defendant could not allege any burden from producing the requested information because the defendant had already reviewed, compiled and produced the requested information to the government. *See In re Firstenergy*, 316 F.Supp.2d at 592–93. Likewise, in the *Nicor* securities litigation, the court lifted the stay and noted that "since these documents have already been found and compiled and plaintiffs will pay production costs, defendants will not be unduly burdened by producing them to plaintiffs now." *Nicor*, 2003 WL 22013905, at *2.

Similarly, in the *Enron* securities litigation, the court modified the PSLRA's discovery stay and permitted the plaintiffs to obtain documents that had already been, or would be, made available to and reviewed by the government and others. *See In re Enron*, 2002 WL 31845114, at *1. The *Enron* court noted that the PSLRA discovery stay was designed to protect defendants from unnecessary discovery costs, but that the burden was slight because Enron had already found, reviewed and organized the documents. *See id.* at *3. The court therefore directed that the materials be produced to the lead plaintiff because "[i]n a sense this discovery has already been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse." *Id.* at *3.

184

The Lead Plaintiffs must now determine their litigation strategy, principally whether or not to seek an early settlement to benefit the class without further expense. The requested discovery is essential to determine that strategy and to assist in formulating an appropriate settlement demand. The Lead Plaintiffs will suffer undue prejudice in having to defer such decisions. The Defendants have not demonstrated any burden imposed by complying now with the inevitable discovery.

### Conclusion

The motion of the Lead Plaintiffs is granted, and the PSLRA stay is lifted.

It is so ordered.