**In re: FIRSTENERGY CORP. SECURITIES LITIGATION**

**This Document Relates To All Actions.**

No. 5:03–CV–1684.

United States District Court, N.D. Ohio.

May 3, 2004.

Andrei V. Rado, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Charles J. Piven, Law Office of Charles J. Piven, Baltimore, MD, Daniel P. Goetz, Weisman, Kennedy & Berris, Cleveland, OH, Karen T. Rogers, Milberg, Weiss, Bershad, Hynes & Lerach, Los Angeles, CA, Lubna M. Faruqi, Faruqi & Faruqi, Nadeem Faruqi, Faruqi & Faruqi, LLP, New York City, Patrick J. Coughlin, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, R. Eric Kennedy, Weisman, Kennedy & Berris, Cleveland, Richard S. Wayne, Strauss & Troy, Cincinnati, Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach, New York City, William K. Flynn, Strauss & Troy, Cincinnati, William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, X. Jay Alvarez, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Brian E. Dickerson, Maguire & Schneider, Columbus, OH, Glen L. Abramson, Berger & Montague, Philadelphia, PA, Marc S. Henzel, Bala Cynwyd, PA, Sherrie R. Savett, Berger & Montage, Philadelphia, PA, Stephen A. Weiss, Seeger Weiss, Charles H. Dufresne, Jr., Marc C. Gardy, Abbey Gardy LLP, Christopher S. Hinton, Wolf Haldenstein Adler Freeman & Herz, Gregory M. Nespole, Wolf Haldenstein Adler Freeman & Herz, New York City, Mark S. Henzel, Bala Cynwyd, PA, Mark C. Rifkin, Wolf Haldenstein Adler Freeman & Herz, New York City, Ellen M. Kramer, Cohen Rosenthal & Kramer, James B. Rosenthal, Cohen Rosenthal & Kramer, Joshua R. Cohen, Cohen Rosenthal & Kramer, Cleveland, OH, Kevin M. McGee, Zwerling Schachter & Zwerling, Richard A. Speirs, Zwerling, Schachter & Zwerling, Robert S. Schachter, Zwerling, Schachter & Zwerling, Christopher J. Keller, Goodkind, Labaton, Rudoff & Sucharow, New York City, David A. Rosenfeld, Melville, NY, Frank E. Piscitelli, Jr., Cleveland, OH, Jonathan M. Stein, Cauley Geller Bowman & Rudman, Boca Raton, FL, Paul J. Geller, Cauley Geller Bowman Coates & Rudman, Boca Raton, FL, Samuel H. Rudman, Milberg Weiss Bershad Hynes & Lerach, New York City, Jack Landskroner, Landskroner Law Firm, Cleveland, OH, Mark A. Topaz, Schiffrin & Barroway, Richard A. Maniskas, Bala Cynwyd, PA, Andrew J. Brown, Milberg Weiss Bershad Hynes & Lerach, Darren J. Robbins, Milberg Weiss Bershad Hynes & Lerach, Henry R. Rosen, Milberg Weiss Bershad Hynes & Lerach, Erin P. McDaniel, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Gregory M. Egleston, Bernstein Liebhard & Lifshitz, Sandy A. Liebhard, Bernstein Liebhard & Lifshitz, New York City, for Gerald Godin, on Behalf of Himself and all

Others Similarly Situated, Olga Pylpow, Individually and on behalf of others similary situated, Consolidated from case 5:03cv1768, Michael Pollack, On behalf of himself and all others similarly situated, Consolidated from case 5:03cv1766, David Malka, On behalf of himself and all others similarly situated, Consolidated from case 5:03cv1779, Jack Mohror, On behalf of himself and all others similarly situated, Consolidated from case 5:03cv1848, George B. Allen, SEP IRA, individually and on behalf of all others similarly situated, Consolidated from case 5:03cv1852, John A. Campagnuolo, Individually and on behalf of all others similarly situated, Consolidated from case 5:03cv1718, Thomas Mahon, Individually and on behalf of all others similarly situated, Consolidated from case 5:03cv1711, City of Sterling Heights General Employees Retirement System, On behalf of themselves and all others similarly situated, Consolidated from case 5:03cv2085, Central Laborers' Pension Fund, On behalf of themselves and all others similarly situated, Consolidated from case 5:03cv2085, Institutional Investors Group, Consolidated from case 5:03cv2085, Nellie C. Sharpe, Individually and on behalf of all others similarly situated, Consolidated from 5:03cv1992, Plaintiffs.

Joseph A. Castrodale, Calfee, Halter & Griswold, Mark I. Wallach, Calfee, Halter & Griswold, Cleveland, OH, Orrin L. Harrison, Akin, Gump, Strauss, Hauer & Feld, Dallas, TX, Paul R. Bessette, Akin, Gump, Strauss, Hauer & Feld, Austin, TX, Steven S. Kaufhold, Akin, Gump, Strauss, Hauer & Feld, Los Angeles, CA, Maura L. Hughes, Calfee, Halter & Griswold, Nathan A. Wheatley, Calfee, Halter & Griswold, Cleveland, OH, for FirstEnergy Corp., H. Peter Burg, Anthony J. Alexander, Richard H. Marsh, Harvey L. Wagner, Carol A. Cartwright, Consolidated from case 5:03cv1779, Robert B. Heis-

ler,Jr., Consolidated from case 5:03cv1779, Robert L. Loughhead, Consolidated from case 5:03cv1779, Russel W. Maier, Consolidated from case 5:03cv1779, John M. Pietruski, Consolidated from case 5:03cv1779, Robert N. Pokelwaldt, Consolidated from case 5:03cv1779, Paul J. Powers, Consolidated from case 5:03cv1779, Catherine A. Rein, Consolidated from case 5:03cv1779, Robert C. Savage, Consolidated from case 5:03cv1779, George M. Smart, Consolidated from case 5:03cv1779, Jesse T. Williams, Consolidated from case 5:03cv1779, Patrick K. Woolf, Consolidated from case 5:03cv1779, William F. Conway, Consolidated from case 5:03cv1779, Carlisle A.H. Trost, Consolidated from case 5:03cv1779, Defendants.

## OPINION & ORDER

GWIN, District Judge.

On February 23, 2004, Defendants moved to dismiss the Plaintiffs' Consolidated Complaint. [Doc 60]. Defendants assert that Plaintiffs have failed to sufficiently plead securities fraud under the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b). Plaintiffs oppose this motion. Further, Plaintiffs ask the Court to strike a number of Defendants' exhibits attached to the motion to dismiss. [Doc. 72]. For the following reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' motion to strike and **DENIES** Defendants' motion to dismiss **EXCEPT** as to Plaintiffs' claim brought under § 12(a)(2) of the Securities Act.

## I. BACKGROUND

Plaintiffs bring this putative class action on behalf of all who purchased or otherwise acquired FirstEnergy securities between April 17, 2001 and August 19, 2003. Defendant FirstEnergy, an Akron—based

holding company, owns utility businesses operating in Ohio, New Jersey, and Pennsylvania. Defendant Anthony A. Alexander served as FirstEnergy's President and Chief Operating Officer during the putative class period; Defendant Richard H. Marsh served as FirstEnergy's ChiefFinancial Officer; and Defendant Harvey L. Wagner served as FirstEnergy's Controller and Chief Accounting Officer.

The Court gives a brief description of Plaintiffs' allegations. A more complete statement of Plaintiff's allegations comes later. With their amended complaint, Plaintiffs allege that FirstEnergy issued false and misleading public statements about the Company's financial performance and operations during the class period. Specifically, Plaintiffs' amended complaint asserts that the Defendants failed to disclose improper accounting practices and failed to disclose current and foreseeable liabilities and expenses associated with FirstEnergy's Davis–Besse nuclear power plant and FirstEnergy's power transmission assets.

According to Plaintiffs' amended complaint, Defendants inflated FirstEnergy's securities prices through misleading statements and omissions about its operations. In major part, Plaintiffs say Defendants misled investors to facilitate a merger with General Public Utilities, Inc. ("GPU"). Since the merger with GPU required FirstEnergy to assume a significant amount of new debt, the Company allegedly misled investors to maintain its already precarious credit rating.[1]

Thus, Plaintiffs' amended complaint also contends that, before the merger, the individual Defendants Alexander, Marsh, and Wagner purposefully concealed problems with FirstEnergy's Davis–Besse nuclear power plant and the Company's transmission assets. In fact, Plaintiffs's amended complaint alleges that individual Defendants abided a culture at Davis–Besse that intimidated employees with safety concerns. During the same time, Defendants publicly stated that no problems existed at the plant. In reality, Plaintiffs assert that Defendants had information in their possession showing that the plant's reactor containment chamber was leaking at times First Energy made assuring statements.[2]

Similarly, Plaintiffs aver that the Defendants knew that the Company's power generation and transmission assets desperately needed upgrading. Yet, the Defendants failed to disclose the state of disrepair of these assets. In contrast to the assurances given by the Defendants, the Plaintiffs amended complaint alleges that FirstEnergy's generation and transmission systems significantly contributed to the August 14, 2003 blackout experienced in parts of the United States and Canada.

The amended complaint alleges that at the same time Defendants were hiding FirstEnergy's operational problems, the Company artificially inflated its financial prospects through accounting improprieties. During the class period, Plaintiffs aver that Defendants improperly accounted for costs incurred in connection with the deregulation of certain of its businesses by using an inappropriately long amortization schedule. Plaintiff's amended complaint further alleges that FirstEnergy inappropriately excluded losses from

---

1. When FirstEnergy first announced the planned acquisition of GPU, Standard & Poors rated the Company as "BBB." Plaintiffs contend this placed FirstEnergy one notch above the lowest rating for investment grade bonds.

2. These include photographs and videotapes, including an April 2000 photo now rather ominously referred to as the "Red Photo" that showed rust-colored boric acid corrosion leaking from the ports of the reactor dome.

an Argentina subsidiary, Endersma. According to Plaintiffs, these accounting irregularities materially inflated the Company's reported income, thereby deceiving investors.

Further supporting their claims, the Plaintiffs' amended complaint says that once the merger with GPU occurred, individual Defendants Alexander, Marsh, and Wagner promptly sold 57.9% of their FirstEnergy holdings. These sales occurred just days before FirstEnergy disclosed the various problems it faced at the Davis–Besse plant. This alleged insider trading occurred within one month of FirstEnergy's stock's all-time high.

After the merger, the amended complaint alleges that the public became increasingly aware of FirstEnergy's earlier-undisclosed problems. When the public obtained a true picture of FirstEnergy's financial situation and the extent of operational problems at Davis–Besse, stock prices fell. Plaintiffs contend Shareholders who purchased FirstEnergy securities in reliance upon these purportedly false information and omissions lost money as FirstEnergy's stock price fell.

## II. LEGAL STANDARD

### A. *Motion to Dismiss*

When analyzing a motion, made under Federal Rule of Civil Procedure 12(b)(6), to dismiss for failure to state a claim, a court must decide whether the moving defendant has shown that the plaintiff can prove no set of facts entitling the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "Given the Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema,*

*N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citation omitted).

 In making this determination, a court must accept all of the complaint's factual allegations as true. *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 512 (6th Cir.2001). Thus, a court will not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir. 1990). Moreover, in considering a motion to dismiss, the need to "draw inferences in favor of the plaintiff remains unchanged by the PSLRA." *Helwig v. Vencor, Inc.,* 251 F.3d 540, 553 (6th Cir.2001). Since the PSLRA requires a strong inference of scienter, a court will only indulge a plaintiff's inferences of scienter if the inferences are "the most plausible of competing inferences." *Id.*

### B. *Pleading Securities Fraud*

In ruling on Defendants' motion to dismiss, the Court must consider whether Plaintiffs' complaint satisfies the fraud pleading requirement of the Federal Rules of Civil Procedure and also the provisions of the PSLRA.

 First, as with all fraud claims, allegations of securities fraud must satisfy Rule 9(b) of the Federal Rules of Civil Procedure. Under Fed.R.Civ.P. 9(b), "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." "To satisfy Rule 9(b), a plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). Moreover, allegations of fraudulent misrepresentation must be specific enough to support an inference that they were knowingly or recklessly made. *See Coffey v. Foamex L.P.,* 2 F.3d 157, 161 (6th Cir.1993). Generalized and conclusory allegations that

the defendants' conduct was fraudulent do not satisfy Rule 9(b). *See Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir.2001).

■ In the context of federal securities fraud claims, plaintiffs must do more than simply satisfy Rule 9(b), however. Congress sought to establish more stringent standards for stating a cause of action for securities fraud with passage of the PSLRA. Under the PSLRA, plaintiffs must specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading. 15 U.S.C. § 78u–4(b)(1). The PSLRA further supplements Rule 9(b)'s pleading standard in the following provision:

> In any private action arising under this chapter in which the plaintiff may recover money damages on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2).

A court must dismiss any action that fails to meet the PSLRA's heightened pleading standard. 15 U.S.C. § 78u–4(b)(3). As the Sixth Circuit has observed, the PSLRA does not change the scienter that a plaintiff must prove to prevail in a securities fraud case but instead changes what a plaintiff must plead in the complaint in order to survive a motion to dismiss. *See In re Comshare, Inc. Securities Litig.*, 183 F.3d 542, 549 (6th Cir.1999).

## III. STRIKING OF EXHIBITS

■ Before applying the foregoing standards in deciding Defendants' motion

to dismiss, the Court considers Plaintiffs' motion to strike certain of Defendants' exhibits. With that motion to strike, the Plaintiffs argue that Defendants' motion to dismiss relies on material outside the complaint. Moreover, Plaintiffs suggest that if such materials are considered, they only create issues of fact, issues that cannot be determined with a motion to dismiss. Plaintiffs contend that, at this stage of the proceedings, the use of documents referenced in the complaint to create issues of fact is also inappropriate. If the Court does consider these exhibits, Plaintiffs request that Defendants' motion to dismiss be converted into a motion for summary judgment.

■ When considering a motion to dismiss, courts should generally not consider matters outside the pleadings. *Weiner v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir. 1997). In securities fraud cases, however, courts may consider the full text of SEC filings, prospectuses, and analysts' reports not attached to a plaintiff's complaint *if* they are integral to statements within the complaint. *See In re Century Business Services Securities Litigation*, 2002 WL 32254513 at *6, 2002 U.S. Dist. LEXIS 26964 at *23 (N.D. Ohio June 27, 2002) (refusing to consider Form S–4 since it was neither quoted nor reference in the complaint nor integral to any statement made in the complaint).[3] Of course, courts may also take judicial notice of public records and documents. *Id.* (citing *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir.1999)).

■ The Court finds that Defendants' exhibits 1, 4, 5, 6, 7, 11, 12, 14, 21, 25, 26, 28–31, 33 are not referenced in the Plain-

---

**3.** The Court does not find support for the proposition that it may consider SEC filings, prospectuses, and analysts' reports not at-

tached to a Plaintiffs' complaint when these documents are not integral to the complaint.

tiffs' complaint and are not integral to the complaint.[4] A number of these documents are, however, the type of public documents appropriate for judicial notice. *See, e.g., New England Health Care Employees Pension Fund v. Ernst & Young LLP*, 336 F.3d 495, 501 (6th Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 1424, 158 L.Ed.2d 87 (2004). When considering public documents in the context of a motion to dismiss, however, the Court may not accept the document to decide facts that are in dispute. *See Hennessy v. Penril Datacomm Networks*, 69 F.3d 1344, 1354–55 (7th Cir.1995) (holding district court properly refused to take judicial notice of Form 10–K to decide a fact in dispute). Here, the Defendants urge the Court to accept the truth of the matters asserted in the exhibits to decide factual disputes in favor of the Defendants. Because this is an improper use of the documents, the Court strikes these exhibits. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir.1996) (noting that although court may take judicial notice of documents filed with the SEC, "[s]uch documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents")

■■■■ Plaintiffs raise concerns regarding Defendants' attachment of the additional exhibits 8, 10, 13, 15, 16, 17, 18, 20, 22–24. Although the complaint references these exhibits, Plaintiffs contend that Defendants inappropriately offer them to resolve issues in dispute. Plaintiffs argue that this is particularly egregious since the complaint references a number of these documents to show the falsity of their contents.

Since the Court finds that the Plaintiffs' complaint cites these documents, it will not strike them. However, the Court remains cognizant that when considering a motion to dismiss it must accept Plaintiffs' factual allegations as true and draw inferences in Plaintiffs' favor.

Having addressed this preliminary issue, the Court now considers the Defendants' motion to dismiss.

## IV. ANALYSIS OF MOTION TO DISMISS

With their motion to dismiss, Defendants assert that Plaintiffs' claims under the 1934 Securities and Exchange Act fail to meet the heightened pleading requirements of the PSLRA and Rule 9(b). Specifically, Defendants argue that Plaintiffs fail to allege that Defendants made any actionable misstatements or omissions and fail to allege facts raising a strong inference of scienter. Additionally, Defendants urge that Plaintiffs' 1933 Securities Act claims (1) fail to satisfy the pleading requirements of Fed.R.Civ.P. 9(b), (2) are raised by a party without standing, and (3) are barred by the applicable statute of limitations. The Court addresses these arguments in turn.

### A. Plaintiffs' § 10(b) / Rule 10b–5 Claim

■■■■■ In their first count of the complaint, Plaintiffs allege violations of § 10(b) and Rule 10b–5.[5] To state a claim under

---

4. Defendants suggest that some of these exhibits are integral to the Plaintiffs' complaint but do not elucidate how the Plaintiffs relied on the exhibits. Thus, the Court cannot find that they are central to the complaint.

5. Rule 10b–5 promulgated under the 1934 Securities and Exchange Act provides:

 It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national security exchange,

§ 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5, a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *In re Comshare*, 183 F.3d at 548 (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1409 (6th Cir.1991)).

### i. Pleading of actionable misstatements and omissions of material facts

With their 124–page consolidated complaint, Plaintiffs assert that during the putative class period Defendants made forty-seven materially false and misleading statements. (CC ¶¶ 64, 65, 67, 69, 71–73, 78–80, 84, 86, 90, 92–95, 104, 106, 108, 112, 114, 115, 118–121, 123, 125, 126, 128, 129, 132, 133, 135, 136, 138–140, 142, 144–147, 149–151). Despite the exhaustive detail of Plaintiffs' pleadings, the Defendants argue that Plaintiffs have not shown the falsity of any one alleged misstatement listed in the complaint.

Defendants' argument fails. The Court finds that the Plaintiffs' consolidated complaint sets forth facts that indicate the falsity of the statements at the time Defendants made them. The forty-seven statements can be divided into two general categories: (1) those that deal with false and misleading statements about the Davis–Besse nuclear plant or the general maintenance of company assets, especially power transmission assets, and (2) those that deal with false and misleading statements about the Company's financial situation. For both categories, the Court concludes that Plaintiffs have. sufficiently alleged the falsity of the statements.

Plaintiffs aver that FirstEnergy made false statements about Davis–Besse throughout the putative class period. (CC ¶¶ 69, 86, 104, 106, 108, 114, 115, 123). These statements included statements that the Company did not know of any cracks with Davis–Besse's reactor head (CC ¶ 86), that it was unaware of any ongoing boric acid leaks (CC ¶ 88c), and that any corrosion was only minor (CC ¶ 106). To show the falsity of such statements, Plaintiffs' amended complaint says a former Davis–Besse engineer disclosed the existence of boric-acid deposits on the nuclear reactor's head in a report to FirstEnergy. (CC ¶ 15).[6] In addition, Plaintiffs contend that

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (2003). Taken together, Section 10(b) of the Exchange Act and this rule "have the effect of prohibiting the commission of fraud in the sale or purchase of securities." *In re Sofamor Danek Group., Inc.*, 123 F.3d 394, 400 (6th Cir.1997).

**6.** Paragraph 15 of the Consolidated Complaint alleges:

15. In fact, from August 2001 through February 16, 2002, in numerous communications with the NRC, defendants caused FirstEnergy to state that no known problems existed at Davis–Besse. These were outright lies. In order to prove their assertions that no problem existed, FirstEnergy provided the NRC with April 2000 photographs of the reactor head—and purposely omitted the "Red Photo" showing the large rust stream from one of the nozzles on the reactor. In addition, FirstEnergy withheld a report drafted by the lead engineer responsible for cleaning the reactor head. In his report, the lead engineer described how he was only given one day to inspect the reactor head despite his findings, which he

FirstEnergy had photographs and video-tapes in its possession purportedly showing the rust-colored boric acid leaking out of the vessel head. (CC ¶ 14).[7] Such allegations sufficiently pleads the falsity of the Defendants' statements regarding Davis–Besse.

Moreover, Plaintiffs describe evidence, available after March 2002, that further suggests the falsity of Defendants' earlier sanguine statements regarding Davis–Besse. (CC ¶ 154–198). For example, FirstEnergy filed a report with the Nuclear Regulatory Commission ("NRC") on March 22, 2002 that revealed the presence of signs that the reactor head was corroding as early as 1999. (CC ¶ 159). In fact, the Company had already special-ordered a new reactor head in 2000. (CC ¶ 159). In addition, the NRC investigation makes clear that Davis–Besse was in a state of neglect and nearing collapse when Defendants proclaimed its soundness. (CC ¶¶ 179–188). Considering these allegations, the Court finds that Plaintiffs have sufficiently alleged the falsity of the Defendants' statements regarding Davis–Besse.

Plaintiffs' complaint also alleges numerous false statements in regards to FirstEnergy's earnings announcements (CC ¶¶ 64, 71, 78, 92, 118, 125, 132, 13 9, 149); statements made to securities analysts during conference calls (CC ¶¶ 72, 7, 80, 93–95, 119, 126, 133,1 40); and statements in quarterly and year-end public filings with the SEC (CC ¶¶ 67, 73, 84, 112, 120, 12, 128, 129, 135, 136, 144–147, 150, 151). Regarding the falsity of these financial statements, Plaintiffs primarily explain that they were false since they violated generally accepted accounting principles ("GAAP") (CC ¶¶ 219–265). Support for this is found in the fact that FirstEnergy was forced to restate its 2001–2002 financial statements. (CC ¶ 221).

The Court finds unpersuasive Defendants' suggestion that this restatement cannot be used to establish the falsity of its earlier financial statements. For this proposition, Defendants rely on cases concluding that violations of GAAP are insufficient, by themselves, to satisfy the PSLRA's scienter requirement. *See, e,g., In re SmarTalk Teleservices Inc. Securities Litig.*, 124 F.Supp.2d 505 (S.D. Ohio 2000). However, *SmarTalk* does not sug-

---

forwarded to management, that he had encountered deposits of hardened boric acid and attempted to remove these deposits with crowbars. The lead engineer concluded that these deposits were "lava-like" and could not be removed with existing methods. Instead of providing this information to the NRC, FirstEnergy gave an adulterated copy of the lead engineer's report which did not indicate that the lead engineer was unable to clean the entire head. In fact, throughout their negotiations with the NRC (while the Company was simultaneously closing the GPU acquisition), FirstEnergy never revealed any information indicating a problem with boric acid corrosion buildup.

7. Paragraph 14 of the Consolidated Complaint alleges, in part:

14. . . . For example, during 2000 when the Company was still negotiating the GPU ac-quisition and seeking shareholder approval for the deal, Davis–Besse personnel took photographs and made videotapes during the course of inspections of the reactor which clearly demonstrated the reactor was leaking. An April 2000 photo—now referred to as the "Red Photo"—clearly demonstrated that rust-colored boric acid corrosion, the hue of dried blood, was leaking from inspection ports on the reactor's dome. Other videotapes taken of the vessel head in 2000 also clearly showed signs of corrosion. Despite this compelling evidence, the Company never revealed this information when requested in 2000 or in 2001 when it was negotiating with the NRC over the mandatory closure of the Davis–Besse plant after the NRC raised concerns about cracks and leaking.

gest that a restatement because of a GAAP violation does not establish the falsity of the prior financial statement. In fact, the *SmarTalk* court assumed that violations of GAAP showed the falsity of the earlier financial statements. *Id.* at 516. Similarly, in *Merzin v. Provident Financial Group Inc.*, 311 F.Supp.2d 674, 679–81, 2004 WL 717256 *4–5 (S.D.Ohio 2004), the court assumed that the need for a restatement demonstrated the falsity of the prior statement even if it did not, alone, plead the requisite scienter. Such an assumption is logical since the purpose of a restatement is to correct an error in a previously-issued financial statement. By definition then, a restatement says that the prior financial statement was false.

 Defendants further suggest that they cannot be liable for any omission in disclosing facts about the state of disrepair of Davis–Besse as the Company has no duty to disclose such "general business information." Even accepting as accurate this characterization of the liabilities of Davis–Besse, the Court finds that the Defendants had a duty to disclose the omissions regarding Davis–Besse. As Defendants concede, a company that chooses to speak on an issue must provide complete and non-misleading information. *See Helwig*, 251 F.3d 540. In *Helwig*, the Defendant company made statements that it was unsure how the Balanced Budget Act would effect the company. Once it chose to speak on the issue, the *Helwig* court held that the company needed to disclose fully on the topic. 251 F.3d at 560.

Defendants suggest that their case is distinguishable from *Helwig* and more akin to *In re Ford Motor Co. Securities Litig.*, 184 F.Supp.2d 626 (E.D.Mich.2001). In *Ford Motor Co.*, the court held that general comments about safety and corporate responsibility did not give rise to a duty to disclose information regarding the danger of Firestone ATX tires put on Ford SUV's and to account for future costs of lawsuits and recalls related to the tires. *Id.* at 633.

Here, the Court finds Defendants' situation more analogous to that of the Defendants in *Helwig*. Like the *Helwig* defendants, FirstEnergy chose to assure investors and nuclear regulatory investigators that it had done multiple inspections of Davis–Besse and had found no evidence of problems. (CC ¶ 86). These statements were specific to the safety issues of Davis–Besse, not general comments about safety and corporate responsibility like those made by the *Ford Motor Company* defendants. Once Defendants chose to speak on the issue of the state of the Davis–Besse facility, they could not obfuscate the true situation at Davis–Besse by selectively disclosing information about the plant. *See Helwig*, 251 F.3d at 561 ("[A] company may choose silence or speech elaborated by the factual basis as then known-but it may not choose half-truths.").

 Defendants also argue that seventeen of the alleged misstatements are forward-looking and thus not actionable under the PSLRA.[8] (*See* CC ¶¶ 64, 65, 79, 90, 94, 95, 104, 106, 111, 115, 118, 119, 126, 131, 139, 140). The PSLRA provides a two-prong safe harbor for a Company's forward-looking statements. First, the PSLRA absolutely protects forward-look-

---

8. The PSLRA defines a forward-looking statement as "a statement containing a projection of revenues ... or other financial items," "a statement of the plans and objectives of management for future operations," "a statement of future economic performance," or "any statement of the assumptions underlying or relating to" any of the above. 15 U.S.C. § 78u–5(i)(1)(A)–(D).

ing statements that are material and accompanied by meaningful cautionary language, whatever the defendant's state of mind. 15 U.S.C. § 87u–5(c)(1)(A)(i); see *Champion*, 346 F.3d at 672. Second, a defendant is only liable for forward-looking statements not accompanied by meaningful cautionary language if the plaintiff shows the statements were made with actual knowledge of the statements' falsity. 15 U.S.C. § 78u–5(c)(1)(B); see *Champion*, 346 F.3d at 672.

The Court agrees with Defendants that the seventeen statements at issue here are appropriately classifiable as forward-looking statements. *See Miller v. Champion Enters., Inc.*, 346 F.3d 660, 677 (6th Cir. 2003). However, a number of these statements contain no cautionary language. (*See* CC ¶¶ 65, 94, 95, 111, 115, 118, 131). Since Plaintiffs have sufficiently alleged that Defendants had actual knowledge of the statements' falsity when they were made, Defendants may be liable for these statements.

For those that do contain cautionary language, the Court concludes that the cautionary language is insufficient to bring them within the safe harbor provision. The PSLRA's safe harbor provision only protects forward-looking statements that are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u–5(c)(1). The cautionary language used by the Defendants is general and gives no meaningful caution.[9] Taken together, the facts of the complaint suggest the Defen-

dants had actual knowledge of the problems at Davis Besse. In such a situation, vague and insipid cautionary language is insufficient to afford the statements protection under PSLRA's safe harbor provision. *See In re Prudential Securities Litig.*, 930 F.Supp. 68, 72 (S.D.N.Y.1996) (noting that the safe harbor provision provides "no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainly that the Grand Canyon lies one foot away"). Such language is in sharp contrast to that found sufficiently meaningful in *In re Kindred Healthcare, Inc. Securities Litig.*, 299 F.Supp.2d 724, 739 (W.D.Ky.2004) (finding that cautionary warnings specifically admonishing investors about the "actual risks" the defendant company faced brought statements within safe harbor provision's protections). None of FirstEnergy's cautionary warnings intimated that the statements might be inaccurate because of the Company's failure to repair and maintain the Company's facilities. Rather, the Defendants cautionary language is general and fails to disclose the "actual risks" known by the Company.

■■■■ Moreover, only one of Plaintiffs' allegations must satisfy the PSLRA's pleading standard in order to survive dismissal of the complaint. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 362 (6th Cir.2001). Therefore, even if some of Plaintiffs' allegations are protected by the forward-looking safe harbor, Plaintiffs have set forth numerous unprotected ma-

---

9. A typical example of the cautionary language used by Defendants follows:

This News Release includes forward-looking statements based on information currently available to management. Such statements are subject to certain risks and uncertainties. These statements typically contain, but are not limited to, the terms "anticipate," "expect," "believe," "estimate," and similar words. Actual results may differ materially due to a number of factors including, but not limited to, the speed and nature of regulatory approvals.

terial [10] misstatements and omissions.

The Court turns to consider whether Plaintiffs have sufficiently pled the requisite scienter under the PSLRA.

### ii. Pleading of requisite scienter

■ Defendants assert that the Plaintiffs have not sufficiently pled scienter as required by the PSLRA. In examining Plaintiffs' consolidated complaint, the Court concludes that Plaintiffs have set forth sufficient allegations to create a strong inference of scienter.

The Sixth Circuit holds that the degree of scienter plaintiffs must allege to avoid dismissal of a securities fraud claim under § 10(b) is recklessness for statements of present or historical fact and actual knowledge for forward-looking statements. *In re Comshare*, 183 F.3d 542 (6th Cir.1999); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir.2001) (en banc) ("We inquire instead whether those facts produce a strong inference of scienter in securities fraud, which in this Circuit is recklessness for statements of present or historical fact and actual knowledge in the case of forward-looking statements.")

■ More than mere allegations of motive and opportunity to commit fraud are required. *In re Comshare*, 183 F.3d at 551. However, "[p]laintiffs may meet PSLRA pleading requirements by alleging facts that give rise to a strong inference of reckless behavior." *Id.* Recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Id.* at 550.

■ The determination of whether plaintiffs have sufficiently alleged this requisite state of mind is a fact-intensive analysis based on the totality of the circumstances. *D.E. & J Ltd. Partnership v. Conaway*, 284 F.Supp.2d 719, 742 (E.D.Mich.2003). In deciding whether plaintiffs have met the scienter requirement, some factors courts may consider include: (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on a subject; (3) closeness in time of statement and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) quick settlement of an ancillary lawsuit charging fraud by the company; (6) disregarding current factual information before making statements; (7) disclosure of negative accounting information in a way which hides the negative implications; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in saving their jobs or their salaries. *Helwig*, 251 F.3d at 548–52.

A number of the *Helwig* factors support a determination that the Plaintiffs have sufficiently pled scienter. On the subject of Davis–Besse, the Plaintiffs have alleged divergence between the internal report of a Davis–Besse engineer and the external statements made by the Company about

10. The Court briefly notes that Defendants contest the materiality of the statements in their reply brief. Because the issue had not previously been raised by either party, the Defendants improperly raise it in their reply brief. *See United States v. Campbell*, 279 F.3d 392, 401 (6th Cir.2002) (quoting *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir.2001)). The Court concludes, however, that Plaintiffs' alleged misstatements and omissions are ma-terial. Materiality depends on the significance a reasonable investor would place on the withheld or misrepresented information. *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978; *Helwig*, 251 F.3d at 555. The state of disrepair at Davis–Besse and the true financial picture of the company are information that would be of concern to a reasonable investor.

the plant. For example, the amended complaint alleges that: "FirstEnergy provided the NRC with April 2000 photographs of the reactor head—and purposely omitted t he "Red Photo" [also an April 2000 photograph] showing the large rust stream from one of the nozzles on the reactor." (CC ¶ 15) Relatedly, Plaintiffs assert that Defendants disregarded known current knowledge when the Company issued optimistic statements about Davis–Besse. (CC ¶¶ 14, 154–198).

 The Court also finds that the GAAP violation, in combination with the existence of other *Helwig* factors, supports a strong inference of scienter on the part of the Defendants. The Defendants accurately point out that a Company's failure to follow GAAP is, by itself, insufficient to establish the requisite knowledge for a securities fraud claim. *In re Comshare*, 183 F.3d at 553. However, such failures, when combined with allegations showing that defendants knew or should have known of the errors, may give rise to a strong inference of scienter. *See D.E. & J Ltd. Partnership v. Conaway*, 284 F.Supp.2d 719, 744 ("[W]hile GAAP violations, standing alone, will not establish a strong inference of scienter, such violations may be considered as one of the *Helwig* factors."); *In re SmarTalk Teleservices Sec. Litig.*, 124 F.Supp.2d at 515.

Plaintiffs' complaint alleges a multitude of red flags and suspicious facts suggesting that the Defendants knew or should have known of the accounting errors when they were made. The pleadings of Plaintiffs are unlike those alleged in cases in which courts have held that a violation of GAAP does not suggest a strong inference of scienter. *See, e.g., Merzin v. Provident Financial Group, Inc.*, 311 F.Supp.2d 674 (S.D.Ohio 2004) (finding no strong inference of scienter when plaintiffs pled scienter based on a large restatement in the absence of any red flags). Here, Plaintiffs do not simply allege an accounting error or mere negligence by Defendants. Instead, Plaintiffs assert that Defendants were well aware of facts concerning the upkeep of Davis–Besse and the Company's other assets and knew that it was using improper accounting practices. (CC ¶¶ 237–38). Moreover, Plaintiffs have alleged accounting errors and improprieties that are significant in nature and magnitude. For fiscal year 2001, Plaintiffs aver that the Company's accounting improprieties resulting in an overstatement of net income by more than $100 million. (CC ¶ 220).[11] In fiscal year 2002, Plaintiffs allege that the Company's accounting errors lead to an overstatement of net income by almost $350 million. (CC ¶ 220).[12] In the first quarter of 2003, Plaintiffs contend that the accounting misstatements resulted in an overstatement of net income by more than $100 million. (CC ¶ 220).[13] The fact that Defendants' accounting practices resulted in such enormous overstatements of revenue for several years further supports an inference of scienter. *See PR Diamonds, et al. v. Chandler, et al.*, 364 F.3d 671, 693–98 (6th Cir.2004) (noting that pervasive and egregious accounting errors have been found by courts to support a strong inference of scienter)

Plaintiffs further support their inference of scienter by pointing out that the Defen-

---

**11.** Plaintiffs state that FirstEnergy reported a net income of $646.4 million in 2001. The actual net income was $532.0 million.

**12.** In fiscal year 2002, FirstEnergy reported a net income of $629.3 million. The actual net income was $286 million.

**13.** In the first quarter of 2003, FirstEnergy reported a net income of $241 million. The actual net income was $123.8 million.

dants had a strong motive for making misleading statements and omissions as evidenced by insider trading. Defendants Alexander, Marsh, and Wagner respectively sold 27.08%, 80.55%, and 38.57% of their owned shares within a month of FirstEnergy's stock hitting its all time high and just days before disclosing the problems at Davis–Besse. (CC ¶¶ 26, 27). Plaintiffs argue that this insider selling at an opportunistic time supports an inference of fraudulent intent to mislead the market for personal gain. Indeed, other courts have concluded that insider sales made when a company's stock price is near an all time high are probative of scienter. *See, e.g., In re Complete Mgmt. Inc. Securities Litig.*, 153 F.Supp.2d 314, 328 (S.D.N.Y.2001); *Angres v. Smallworldwide PLC*, 94 F.Supp.2d 1167, 1175–76 (D.Colo.2000). The Court finds that the expedient sales by these insider Defendants are probative of scienter in light of Plaintiffs' other alleged facts.

▃▃▃ Plaintiffs additionally raise a strong inference of scienter by pointing to the Defendants motivation to complete the GPU merger. Specifically, Plaintiffs aver that FirstEnergy could not have obtained the financing necessary for the merger if the true state of disrepair of the Company assets were made public. The temporal proximity of the acquisition on February 16, 2002, and the subsequent disclosure of problems at Davis–Bessie beginning in March 2000 further supports an inference of scienter.

When considering Plaintiffs' allegations in the aggregate, the Court finds that Plaintiffs have alleged a strong inference of scienter. Such an inference is indeed the most plausible one to be drawn from the facts set forth in the complaint. The Plaintiffs' pleadings shows, at a minimum, that Defendants acted with an extreme disregard for the standard of ordinary care

in making their public financial statements and statements about Davis–Besse. Even under the stringent standards of the PSLRA, this is all that is required at this stage of the litigation. *See Miller*, 346 F.3d at 689.

Defendants argue for the first time in their reply brief that Plaintiffs' complaint should be dismissed because it does not plead scienter with particularity as to each defendant. The Court disposes of this argument both on procedural grounds and on the merits.

▃▃▃ It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition. *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir.2002) (quoting *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir.2001)). Defendants failed to even passingly raise this argument in their original motion, and Plaintiffs did not raise it in their opposition. Therefore, the Court concludes that the argument fails for procedural reasons.

Even if the Court were to consider the Defendants' argument, the Court finds that it also fails on the merits. The Sixth Circuit has not addressed whether the group pleading doctrine survived the PSLRA. However, the overwhelming majority of district courts within the Sixth Circuit have allowed for group pleading in post-PSLRA cases. *See, e.g., In re Century Business Services Securities Litig.*, 2002 WL 32254513 (N.D.Ohio June 27, 2002); *In re SmarTalk Teleservices, Inc. Securities Litig.*, 124 F.Supp.2d at 545; *Picard Chemical, Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F.Supp. 1101 (W.D.Mich.1996); *but see D.E. & J Ltd. Partnership v. Conaway*, 284 F.Supp.2d at 731 (E.D.Mich.2003).

▃▃▃ The Court finds that the group-pleading doctrine has continued via-

bility post-PSLRA. Moreover, even if the group pleading doctrine did not survive, the Plaintiffs have sufficiently pled scienter as to each individual Defendant. Specifically, Plaintiffs assert that Defendant Marsh knowingly made false statements about the Company. (CC ¶ 91).[14] Further, the Plaintiffs raise an inference of scienter as to each individual Defendant by alleging each had committed suspicious insider trading near the time that the stock was trading at an all-time high. (CC ¶ 100). In addition, Plaintiffs attribute various written and oral statements to the individual Defendants that allegedly were known to be false and misleading at the time they were made. (CC ¶¶ 120, 128, 135, 144, 150).

### iii. Jusifiable reliance and causation

 The final elements for a § 10(b) claim are justifiable reliance by the plaintiffs on the alleged misstatements and a showing that the misstatements proximately caused the plaintiffs' injury. As the Defendants do not dispute that Plaintiffs have sufficiently pled these elements, the Court addresses them briefly.

The Court concludes that the complaint sufficiently alleges that Plaintiffs justifiably relied upon Defendants' statements and that the alleged misinformation about Davis–Besse and FirstEnergy's financial situation proximately caused Plaintiffs' injury. Plaintiffs cite alleged misstatements and omissions in routine Securities and Exchange Commission filings, company press releases, and other public documents. Investors rely on this type of information about a company's securities. Further, these misstatements and omissions can proximately cause Plaintiffs' injury since FirstEnergy's stock price fell when the omitted information became known and Plaintiffs' investments dropped substantially. See In re Kindred Healthcare, Inc. Securities Litig., 299 F.Supp.2d 724, 731 n. 5 (W.D.Ky.2004) (finding justifiable reliance and proximate cause sufficiently pled based on such facts).

### B. Plaintiffs § 20(a) Claim

 In the second count of their complaint, Plaintiffs aver that individual Defendants Alexander, Marsh and Wagner violated § 20(a) of the Security Act.[15] To plead a § 20(a) violation, a complaint must allege facts establishing that the defendant "controlled" another person who committed an underlying violation of the Securities Act, and that the defendant "culpably participated" in that violation. D.E. & J Ltd., 284 F.Supp.2d at 750. Defendants contend that this claim fails as a matter of law since Plaintiffs have not sufficiently pled an underlying securities fraud claim.

As discussed supra, the Court concludes that Plaintiffs have, in fact, sufficiently pled securities fraud. Further, Plaintiffs adequately allege that Defendants Alexander, Marsh, and Wagner had direct and supervisory involvement in the day-to-day operations of FirstEnergy. Moreover,

14. Paragraph 91 alleges:
 Defendant Marsh's statements that the Company's capital spending would decline were false and misleading as defendant Marsh knew that the Company was going to have to replace the reactor head at the Davis–Besse nuclear power plant, would incur significant operating and maintenance expenses associated with that replacement, and that the Company's investment in its electricity grid infrastructure including telephone line maintenance, software monitoring systems, safety and emergency response training and over-all maintenance was woefully inadequate.

15. The 1934 Securities and Exchange Act imposes liability on "controlling persons" of an entity that has violated the Act. 15 U.S.C. § 78t(a) (2003); In re Comshare, 183 F.3d 542, 548 (6th Cir.1999).

Plaintiffs maintain that these Defendants were provided with or had unlimited access to copies of the Company's press releases, public filings, and other statements alleged to be misleading. In light of these pleadings, the Court determines that Plaintiffs have sufficiently pled a § 20 claim.

## C. Sub-class of Bondholders' §§ 11, 12(a)(2) and 15 Claims

In the complaint's final count, Plaintiff Central Laborers Pension Fund alleges on behalf of a sub-class of bondholders that the Defendants violated § 11 of the Securities Act of 1993 by disseminating a registration statement that contained false and misleading statements and failed to state material facts.[16] Moreover, Plaintiff asserts that the individual Defendants solicited FirstEnergy bonds based on this registration statement, in violation of § 12(a)(2) of the Securities Act.[17] Finally, Plaintiff contends the individual defendants were "control persons of FirstEnergy by virtue of their positions as directors and/or senior officers" and violated § 15 by having signed the registration statement.[18] Defendants raise several reasons why the Court must dismiss this count of the complaint.

■ The Court first addresses whether these claims are barred by the applicable statute of limitations. Plaintiffs contend that the Sarbanes–Oxley Act extended the one-year limitations period to claims under §§ 11 and 12(a)(2) of the Securities Act.

*See* 28 U.S.C. § 1658. However, the Sarbanes–Oxley Act is expressly limited to "claim[s] of fraud, deceit, manipulation or contrivance." Since fraud is not a required element for claims under §§ 11 or 12(a)(2), the Court concludes that Sarbanes–Oxley Act does not extend the limitations period for these claims. *See Friedman v. Rayovac Corp.*, 295 F.Supp.2d 957, 975 (W.D.Wis.2003) (so concluding); *In re Merrill Lynch & Co., Inc. Research Reports Securities Litig.*, 272 F.Supp.2d 243, 264 (S.D.N.Y.2003) (same).

■ Thus, the Court finds that Plaintiffs' claim must be brought within one year after discovery of the untrue statement or omission. Discovery may occur through actual or inquiry notice of the alleged fraud. 15 U.S.C. § 77(m). Inquiry notice is triggered "when a plaintiff should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud." *New England Health Care Employees Pension Fund*, 336 F.3d at 501.

■ Defendants and Plaintiffs dispute when Plaintiffs had inquiry notice in this case. Defendants assert that the statute of limitations began to run in March of 2002 when the market first learned of problems at Davis–Besse. In contrast, Plaintiffs contend that they were not on inquiry notice that certain statements made by Defendants in the prospectus were false until at least August of 2003

---

**16.** Section 11 of the Securities Act imposes civil liability on issuers and signatories, such as officers of the issuer and underwriters, of a registration statement that "contained an untrue statement of a material fact or omitted to state a material fact ... necessary to make the statements therein not misleading." 15 U.S.C. § 77k.

**17.** Section 12(a)(2) of the Securities Act provides that a person who sells securities by

means of a prospectus that misrepresents or omits material facts is liable to the person purchasing such security from him. 15 U.S.C. § 771(a)(2).

**18.** Section 15 of the Securities Act makes liable control persons who have signed a registration statement with untrue statements or material omissions or have otherwise participated in the process which allowed the offering to have been completed. 15 U.S.C. § 77o.

when the Company announced its restatement.

In light of this factual dispute, the Court finds that whether or not the Securities Act's one-year statute of limitations bars the Plaintiffs' claims is a question of fact that cannot be decided on Defendants' motion to dismiss. *See Newman v. Warnaco Group, Inc.,* 335 F.3d 187, 194–95 (2d Cir. 2003) (concluding that court should dismiss a claim as barred by the statute of limitations based on inquiry notice "only when uncontroverted evidence irrefutably demonstrates when plaintiff discovered or should have discovered" the violation). At this juncture, the Court refuses to dismiss the claims as untimely.

■ The Court next examines the standing of the Plaintiff Central Laborers Pension Fund to bring a claim under § 12(a)(2) on behalf of the subclass of bondholders. Defendants urge that the Court must dismiss this claim since Central Laborers did not purchase FirstEnergy's bonds in the initial offering. Rather, Plaintiff purchased FirstEnergy's bonds in the secondary market on January 24, 2002. The Supreme Court has held that 12(a)(2) only applies to initial offerings and not to aftermarket trading. *Gustafson v. Alloyd Co.,* 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995); *see also* 124 F.Supp.2d 452, 463–64 (W.D.Ky.2000). Consequently, the Court dismisses this claim.

■ Finally the Court considers whether Plaintiff Central Laborers Pension Fund has adequately pled Securities Act claims under §§ 11 and 15. Preliminarily, the Court concludes that Plaintiffs' claims are not governed by the fraud pleading of Fed.R.Civ.P. 9. Courts have concluded that the heightened pleading standard of Rule 9(b) applies to § 11 claims premised on allegations of fraud. *See, e.g., Rombach v. Chang,* 355 F.3d 164 (2d Cir.2004). However, Plaintiffs have purposely not premised their claims on any allegations of fraud.[19] Since fraud is not an element or requisite to a claim under § 11 or § 15, the claims are not subject to Rule 9(b) heightened pleading requirement. The Court, therefore, will not apply the heightened pleading standard to the Security Act claims.

■ Under Fed.R.Civ.P. 8(a), the Court finds that Plaintiff Central Laborers has sufficiently alleged its Security Acts claims to withstand Defendants' motion to dismiss. Plaintiff contends that the registration statement contained untrue statements regarding Davis–Besse and that this registration statement was signed by individual Defendants Alexander, Marsh, and Wagner. This is sufficient to state § 11 and § 15 Securities Act claims.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' motion to strike. The Court **DENIES** Defendants' motion to dismiss as to all claims except the claim brought under § 12(a)(2). The § 12(a)(2) is **DISMISSED** without prejudice for lack of standing.

IT IS SO ORDERED.

---

**19.** In ¶ 312 of the complaint, Plaintiffs "explicitly exclude any allegation contained here in that could be construed to allege intentional or reckless conduct."